**Henry Thomas TURPIN,
Plaintiff–Appellant,**

v.

**UNITED STATES of America,
Defendant–Appellee.**

**No. 91–1773.**

United States Court of Appeals,
Fourth Circuit.

Argued May 5, 1992.

Decided July 17, 1992.

Mark John Hardcastle, Hardcastle & Dever, Rockville, Md., argued, for plaintiff-appellant.

Susan Findling Fleig, Tax Div., U.S. Dept. of Justice, Washington, D.C., argued (James A. Bruton, Acting Asst. Atty. Gen., Gary R. Allen, Kenneth L. Greene, Kevin M. Brown, Tax Div., U.S. Dept. of Justice, Washington, D.C., Richard D. Bennett, U.S. Atty., Baltimore, Md., on brief), for defendant-appellee.

Before RUSSELL and LUTTIG, Circuit Judges, and KELLAM, Senior District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

LUTTIG, Circuit Judge:

A jury in the United States District Court in Maryland found by special verdict that plaintiff-appellant Henry Thomas Turpin had not willfully failed to pay over federal taxes that had been withheld from the wages of Turpin's mining company employees. The district court granted the government's motion for judgment notwithstanding the verdict on its counterclaim for unpaid taxes, holding that Turpin had, as a matter of law, willfully failed to pay the taxes in question. Because we conclude that there was ample evidence to support the jury's special verdict, we reverse.

### I.

The relevant facts are detailed in the opinion below, *Turpin v. United States*, 68 A.F.T.R.2d (P–H) ¶ 91–5109, 91–2 U.S.Tax Cas. (CCH) ¶ 50,403, 1991 WL 214137 (D.Md. July 25, 1991), and we summarize them here only to the extent needed for disposition of this appeal.

Plaintiff-appellant Henry Thomas Turpin was employed by the Black Maverick Coal Company, a West Virginia coal mining corporation. Black Maverick operated a coal mining facility owned by the Powellton Company in Man, West Virginia. Turpin became secretary and treasurer of Black Maverick on May 5, 1982. On September 17, 1982, Turpin acquired a 49 percent interest in Black Maverick and became president, secretary, and treasurer. He acquired the remaining 51 percent interest in the corporation on November 10, 1982. *See* 68 A.F.T.R.2d ¶ 91–5109, at 91–5548 to –5549, 91–2 U.S.Tax Cas. ¶ 50,403, at 89,451.

Under the terms of the operating agreement between Powellton and Black Maverick, Black Maverick was prohibited from mining coal anywhere other than Powellton's Man facility. With respect to mining at the Man facility, Black Maverick was required to deliver its coal to a Powellton tipple [1] at a specified price per ton, to pur-

---

**1.** A tipple is "an apparatus by which loaded cars are emptied by tipping[,] sometimes including an elevated runway or framework upon which the cars are run for tipping." Webster's Third New International Dictionary of the English Language 2398 (1986).

chase all necessary supplies and materials from Powellton, and to conduct mining operations according to Powellton's rules and regulations. In a biweekly report, Powellton calculated the amounts due to Black Maverick for tons of coal mined, less amounts owed for lease and supply payments. Powellton directed Black Maverick to compute the gross weekly payroll for Black Maverick employees and to provide a statement showing gross wages. After receiving the payroll information, together with gross payroll checks, Powellton would deduct amounts for federal and state taxes and remit to Black Maverick a single check for the total net payroll. Black Maverick then would issue employees their individual payroll checks. *See* 68 A.F.T.R.2d ¶ 91–5109, at 91–5549, 91–2 U.S.Tax Cas. ¶ 50,-403, at 89,451–52.

On January 9, 1986, the United States assessed Turpin $216,375.76 for Black Maverick's withheld but unpaid payroll taxes during the last three quarters of 1982 and the first three quarters of 1983. On May 24, 1990, Turpin filed a civil action under I.R.C. § 7422 in the United States District Court for the District of Maryland to recover amounts erroneously assessed against or collected from him, and the United States counterclaimed for the unpaid portion of the assessment. Following a two-day trial on April 15 and 16, 1991, the jury returned a special verdict, finding that Turpin was not responsible for collecting, accounting for, and paying over the withheld taxes during the second and third quarters of 1982, but that he was responsible for collection and payment of the taxes during the last quarter of 1982 and the first three quarters of 1983. The jury also found by special verdict, however, that Turpin had not willfully failed to pay any of the taxes in question. Because the jury found that Turpin had not willfully failed to collect, account for, and pay over the taxes during any of the six quarters, Turpin was entitled

to an award of $14,417.28 and an abatement of the tax assessment against him. *See* 68 A.F.T.R.2d ¶ 91–5109, at 91–5549, 91–2 U.S.Tax Cas. ¶ 50,403, at 89,452.

The United States moved for judgment notwithstanding the verdict, and the district court granted the motion in part. The court held that as a matter of law, Turpin was responsible for collecting, accounting for, and paying over withheld taxes not only in the last quarter of 1982 and the first three quarters of 1983, but also (contrary to· the special verdict) in the third quarter of 1982. In addition, the court held that the evidence established as a matter of law that Turpin had willfully failed to collect, account for, and pay over the taxes. The court accordingly entered judgment for the United States as to the last two quarters of 1982 and the first three quarters of 1983. *See* 68 A.F.T.R.2d ¶ 91–5109, at 91–5550 to –5552, 91–2 U.S.Tax Cas. ¶ 50,403, at 89,452–55. Turpin brought this appeal.

II.

Turpin challenges the district court's judgment notwithstanding the verdict, which effectively held him liable as a matter of law under I.R.C. § 6672(a). He contends that there was sufficient evidence introduced at trial to support the jury's special verdict that he did not willfully fail to collect and pay over the federal taxes withheld from Black Maverick's employees, and that he was instead acting under the mistaken but reasonable belief that Powellton was remitting the taxes in question to the IRS. Because the jury correctly found that he did not act willfully in failing to pay the taxes, he argues, he cannot be held liable under section 6672(a). We agree.[2]

A.

▪ Employers are required to deduct and withhold federal income and FICA tax-

---

**2.** Because we conclude that there was sufficient evidence to support the jury's special verdict that Turpin did not act willfully in failing to pay over the federal taxes withheld from Black Maverick's employees, we need not address Turpin's alternative contention that he was not a "responsible person" within the meaning of section

6672(a). *See* Appellant's Br. at 31–35. *See generally O'Connor v. United States*, 956 F.2d 48, 50–52 (4th Cir.1992) (discussing the characteristics of a responsible person). For purposes of this opinion, we assume that Turpin was a "responsible person."

es from their employees' wages. *See* I.R.C. §§ 3102, 3402; Treas.Reg. §§ 31.-6011(a), 31.6071(a). These withheld taxes are held in trust for the United States, *see* I.R.C. § 7501(a), and are often termed "trust fund taxes." *See Slodov v. United States*, 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978). Section 6672(a) provides that a "person required to collect, truthfully account for, and pay over any tax imposed by this title *who willfully fails* to collect such tax, or truthfully account for and pay over such tax" shall "be liable to a penalty equal to the amount of the tax evaded, or not collected, or not accounted for and paid over." I.R.C. § 6672(a) (emphasis added); *cf. id.* § 7202 (criminal sanctions). An employer therefore can be liable under section 6672(a) only if (1) he is a "responsible person" under a duty to collect, account for, and pay over trust fund taxes,[3] and (2) he willfully fails to discharge his duties as a responsible person. *See, e.g., O'Connor v. United States*, 956 F.2d 48, 50 (4th Cir. 1992); *Williams v. United States*, 931 F.2d 805, 809–10 (11th Cir.), *modified on reh'g*, 939 F.2d 915 (11th Cir.1991); *Caterino v. United States*, 794 F.2d 1, 3 (1st Cir.1986), *cert. denied*, 480 U.S. 905, 107 S.Ct. 1347, 94 L.Ed.2d 518 (1987).

The narrow and dispositive issue on appeal, thus, is whether Turpin presented sufficient evidence to support the jury's finding that he did not act willfully in failing to pay over Black Maverick's trust fund taxes.

▮▮▮ Section 6672(a) does not "impose liability without personal fault"; the section requires a "willful failure" by the responsible person to collect, account or pay the required taxes. *Slodov*, 436 U.S. at

254, 98 S.Ct. at 1788–89. One must act "intentionally, conscientiously [sic] and voluntarily." *Cross v. United States*, 311 F.2d 90, 94 (4th Cir.1962); *cf. Monday v. United States*, 421 F.2d 1210, 1216 (7th Cir.) ("[W]illful action under Section 6672 ... refer[s] to voluntary, conscious and intentional—as opposed to accidental—decisions not to remit funds...."), *cert. denied*, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970). The failure to pay trust fund taxes cannot be willful unless there is either "knowledge of nonpayment or reckless disregard of whether the payments were being made." *Teel v. United States*, 529 F.2d 903, 905 (9th Cir.1976); *accord, e.g., Mazo v. United States*, 591 F.2d 1151, 1155 (5th Cir.), *cert. denied*, 444 U.S. 842 (1979). The "intentional preference of other creditors" over the United States is "sufficient to establish the element of willfulness" under section 6672(a). *United States v. Pomponio*, 635 F.2d 293, 298 n. 5 (4th Cir.1980). The responsible person must know of or recklessly disregard the existence of an unpaid deficiency, however, for there to be an *intentional* preference. *See Quattrone Accountants, Inc. v. IRS*, 895 F.2d 921, 928 (3d Cir.1990) (proceeding to "the question [of] whether [the taxpayer] made a voluntary, conscious and intentional decision to prefer other creditors over the IRS" only after establishing that the taxpayer "admits knowing that taxes were not being paid"); *cf. Wood v. United States*, 808 F.2d 411, 415 (5th Cir.1987) ("A considered decision not to pay the taxes owed, evidenced by payments to other creditors with *knowledge* that withholding taxes are due, establishes willfulness." (emphasis added)).[4]

---

**3.** *See id.* § 6671(b) ("The term 'person' ... includes an officer or employee of a corporation ... who ... is under a duty to perform the act in respect of which the violation occurs."). Although section 6672 does not refer by terms to a "responsible person," many cases decided under this section of the Code adopt the phrase as shorthand for "person required to collect, truthfully account for, and pay over any tax imposed by this title." Like the Supreme Court, we use the phrase "without necessarily adopting any of the constructions placed upon it" by other

courts. *Slodov*, 436 U.S. at 246 n. 7, 98 S.Ct. at 1784–85 n. 7.

**4.** " 'Mere negligence in failing to ascertain facts regarding a tax delinquency ... is insufficient to constitute willfulness' " under section 6672(a). *Godfrey v. United States*, 748 F.2d 1568, 1577 (Fed.Cir.1984) (quoting *Bauer v. United States*, 543 F.2d 142, 150 (Ct.Cl.1976)); *see also Kalb v. United States*, 505 F.2d 506, 511 (2d Cir.1974), *cert. denied*, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975).

We believe that there was sufficient evidence, viewed in the light most favorable to Turpin, for the jury reasonably to conclude that Turpin neither knew of nor recklessly disregarded Black Maverick's trust fund tax deficiency during the tax quarters in issue. We hold that the district court therefore erred in granting judgment notwithstanding the verdict on the question of whether Turpin willfully failed to pay over withheld taxes.

Turpin testified at trial that he relied on Powellton to withhold and pay over trust fund taxes and that he was "just a courier" for Powellton "with regard to the [Black Maverick] payroll." J.A. at 155. Each pay cycle, Turpin would prepare gross payroll checks for Black Maverick's employees and deliver those checks to Powellton. *See id.* at 153. Powellton would calculate the total taxes that were required to be withheld from the employees' wages and then return to Turpin a single check in an amount of the net payroll. *See id.* Because the payroll check from Powellton to Black Maverick "was for the net amount," Turpin believed "Powellton Coal Company was taking care of" withholding and paying over the trust fund taxes. *Id.* at 154. The reasonableness of his belief that it was not "Black Maverick's responsibility" to "take care of the taxes," argues Turpin, is supported by the fact that he "had no control of anything" at Black Maverick, notwithstanding his corporate offices. *Id.* Rather, he was limited to "producing coal for a man" and using the net payroll check from Powellton "to pay the men." *Id.* at 154–55. In other words, contends Turpin, Powellton exercised complete control over the finances of Black Maverick, including the payment of trust fund taxes. *See id.* at 153.

This evidence that Turpin, despite his official titles, was little more than a functionary for Powellton in the financial management of Black Maverick is consistent with other evidence that Turpin performed nothing more than ministerial responsibilities while at Black Maverick. Turpin, who was untrained in accounting, business management, or finance, *see id.* at 115, initially entered the coal mining business as a superintendent trainee, *see id.* at 120. Although he became chief officer and sole owner of Black Maverick, Powellton had given him the money to acquire the Black Maverick stock that was held in his name. *See id.* at 130–31. Turpin also testified that Powellton owned the land Black Maverick mined, the mineral rights in that land, the permits, and the mining equipment. *See id.* at 122. Powellton set the price at which Black Maverick would sell coal, *see id.* at 143–44, and Black Maverick dealt exclusively with Powellton in procuring supplies, *see id.* at 146–47.

In employment matters, Turpin had no authority to hire any member of the United Mine Workers of America (UMWA), but rather had to abide by "a Powellton panel list that [Powellton officials] prepared for" him, *id.* at 132, which identified Powellton as "employer," *id.* at 133, 379. Turpin also followed a seniority list supplied by Powellton when hiring. *See id.* at 133–34, 389–90. Powellton, not Black Maverick, was party to a labor contract with the UMWA, *see id.* at 134, and Powellton's tax and Mine Safety Health Administration identification numbers appeared on reports of credited hours filed with the UMWA, *see id.* at 135–36, 495–518. Powellton alone conducted litigation arising out of a labor dispute involving Black Maverick miners, *see id.* at 140, and it secured any labor bonds or insurance required, *see id.* at 148–49.

Based on the evidence recited above, the jury could reasonably infer that Powellton completely managed Black Maverick's finances and payroll and that Turpin neither knew of nor recklessly disregarded the deficiency in Black Maverick's trust fund tax payments during the last two quarters of 1982 and the first three quarters of 1983. *See Gustin v. United States*, 876 F.2d 485, 493 (5th Cir.1989); *Sawyer v. United States*, 831 F.2d 755, 759 (7th Cir.1987).[5]

---

5. Turpin and Black Maverick's previous president, Johnny Johnson, were the only persons authorized to issue checks on behalf of Black Maverick. Between May 5, 1982, the date on which Turpin became Black Maverick's secretary and treasurer, and September 17, 1982,

## B.

■ In an effort to prove that Turpin knew of Black Maverick's tax deficiency, the United States offered into evidence a form Turpin signed on December 8, 1983, following an interview with Internal Revenue Agent Lewis J. Childers, one response in which suggested that Turpin may have known of the tax deficiencies in question. *See* J.A. at 711–14. The form, which Agent Childers had filled out, *see id.* at 163, stated that Turpin "first became aware that [Black Maverick's] tax liability was not paid" as "soon as mine condition[s] got bad" in July 1982, *id.* at 712. However, Turpin also stated in the same form that he was not "aware of any employment or excise tax returns which have not been filed" by Black Maverick or "of any tax liabilities of [the] corporation which have not been reported on a Federal tax return." *Id.* at 713.[6] Because of the seemingly conflicting responses, this form alone could not establish as a matter of law that Turpin knew of or recklessly disregarded unpaid tax liabilities. Even without the second response, it does not follow from the first response that Turpin knew of the unpaid taxes at issue here as a matter of law. Turpin's statement that he knew of deficiencies in Black Maverick's trust fund tax payments as of July 1982 is consistent with his trial testimony that he was aware of taxes for quarters before the third quarter of 1982 that had not been paid. *See id.* at 151 (testimony that Turpin was "aware that certain *prior* trust fund taxes had not been paid"

when he became president of Black Maverick in September 1982 (emphasis added)).[7]

The government suggests that such knowledge of prior deficiencies during and perhaps before the second quarter of 1982 is sufficient to establish that Turpin willfully failed to pay over the withheld taxes for the five succeeding quarters for which he was assessed. *See* Appellee's Br. at 26. By emphasizing the fact that "in September of 1982, Turpin was aware that the trust fund taxes were not being paid" in its conclusion that Turpin had acted willfully, the district court apparently credited the government's argument. 68 A.F.T.R.2d ¶ 91–5109, at 91–5551, 91–2 U.S.Tax.Cas. ¶ 50,403, at 89,454. However, "[t]o hold that [Turpin's] knowledge of a past delinquency alone makes him a guarantor of future tax payments" *as a matter of law* would impose liability without regard to section 6672(a)'s requirement of "willful failure." *Godfrey v. United States*, 748 F.2d 1568, 1578 (Fed.Cir.1984). As the Supreme Court noted in *Slodov*, this theory of liability "is precluded by the history and context of § 6672." 436 U.S. at 253–54, 98 S.Ct. at 1788–89.

A finding of willfulness as a matter of law based upon knowledge of Black Maverick's prior tax deficiencies is especially inappropriate where, as here, there was evidence introduced that Turpin had satisfied himself that the tax liability incurred prior to the third quarter of 1982 would be paid and future deficiencies avoided, and that

Turpin issued approximately seventeen checks in Black Maverick's name as a matter of convenience when Johnson was not available. Because we conclude that the jury could have found that Turpin neither knew of nor recklessly disregarded Black Maverick's tax deficiency, it follows that it could have concluded also that Turpin, although he signed other checks on Black Maverick's behalf from September 1982 through February 1984, never "willfully or intentionally ... pa[id] another creditor instead of paying the IRS when [he] knew the taxes weren't being paid." J.A. at 161.

**6.** Turpin testified at trial that on the day he signed the form, he was preoccupied with state and federal safety inspections at the mine and did not "understand the significance of [the] document" he had signed. *Id.* at 164. He did

not "understand at the time that [he was] indicating on that form that [he] might be responsible for the taxes." *Id.*

**7.** By special verdict, the jury found that Turpin was not a responsible person during the second quarter of 1982. The district court specifically upheld this portion of the special verdict, *see* 68 A.F.T.R.2d ¶ 91–5109, at 91–5550 to –5551, 91–2 U.S.Tax.Cas. ¶ 50,403, at 89,453 (citing *Heimark v. United States*, 18 Cl.Ct. 15 (1989)), and the United States does not contest this finding of fact. This finding of course negates any liability for failure to pay over trust fund taxes in the second quarter of 1982, regardless of whether Turpin's knowledge rendered any "preference" for creditors other than the United States "intentional" and the failure to pay trust fund taxes "willful."

when he learned that the taxes at issue here had not been paid, he affirmatively conducted himself in a manner inconsistent with a prior willful failure to pay over taxes owed. Turpin testified, for example, that when he discovered the deficiency in September 1982, he "went to the Powellton Company and talked to them about it." J.A. at 151. He testified that he came away from this meeting with the impression that Powellton "already knew everything" about the deficiency and that he should have no further concern over the deficiency. *Id.; see also id.* at 152 ("[D]ealing with the Powellton Company I had no worries...."). Additionally, Turpin testified that when he learned in February 1984 of Black Maverick's trust fund tax deficiency for the quarters at issue here, he immediately ceased all direct involvement with Black Maverick and Powellton, *see id.* at 164, 647, and that he thereafter used Black Maverick's business records to help prepare income statements for the period in which the tax deficiency had accrued, *id.* at 165. The jury was entitled to infer from this evidence that Turpin made "an affirmative showing that [he] did *not* disregard his duties, ... that he undertook all reasonable efforts to see that [deficient] taxes would in fact be paid," and, consequently, that he did not act willfully in failing to pay over the taxes. *Feist v. United States*, 607 F.2d 954, 961, 221 Ct.Cl. 531 (1979). In sum, Turpin's knowledge of deficiencies that existed before the third quarter of 1982 did not preclude a jury finding that he did not act willfully in failing to pay over withheld taxes during the last two quarters of 1982 and the first three quarters of 1983.[8]

### CONCLUSION

Whether someone has acted willfully is an inquiry " 'necessarily directed to

the state of the responsible person's mind.' " *Thibodeau v. United States*, 828 F.2d 1499, 1505 (11th Cir.1987) (quoting *Mazo*, 591 F.2d at 1157). As such, this is the quintessential jury issue. Here, the jury specifically found that appellant had not acted willfully in failing to pay over the federal taxes withheld from Black Maverick's employees. While ordinarily an officer of a corporation knows or absent reckless disregard should know whether or not employee withholding taxes are being paid over to the IRS, the jury was entitled in the unusual circumstances of this case to conclude otherwise. The district court's grant of judgment notwithstanding the verdict is accordingly reversed, and the case is remanded with instructions to enter judgment for Turpin in accordance with the special verdict of the jury.

REVERSED AND REMANDED.

---

8. The government relies on *Gustin v. United States*, 876 F.2d 485 (5th Cir.1989), and *Hochstein v. United States*, 900 F.2d 543 (2d Cir. 1990), in support of the district court's judgment notwithstanding the verdict. This reliance is misplaced. The holding of *Gustin* is unquestionably in accord with our disposition of this appeal. In that case, the Fifth Circuit reversed as clearly erroneous a district court's finding that a taxpayer willfully failed to pay taxes

when that taxpayer "made every reasonable effort to see that [previously accrued] taxes were paid, that he was repeatedly promised by the owners of the corporation that the taxes would be paid and that he had no reason to believe" that a prior delinquency had not been resolved. 876 F.2d at 493. *Hochstein* is obviously inapposite because there the taxpayer "admittedly knew that withholding taxes were not being paid." 900 F.2d at 548.