28 F.3d 1211
 74 A.F.T.R.2d 94-5297
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Henry Thomas TURPIN, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 93-2342.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 13, 1994.
Decided: July 11, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frank A. Kaufman, Senior District Judge. (CA-90-1403-K)
 ARGUED: Mark John Hardcastle, Hardcastle & Dever, P.A., Rockville, MD, for appellant.
 Kevin Martin Brown, Tax Division, United States Department of Justice, Washington, DC, for appellee.
 ON BRIEF: Loretta C. Argrett, Asst. Atty. Gen., Gary R. Allen, Gilbert S. Rothenberg, Lynne Ann Battaglia, U.S. Atty., Tax Division, United States Department of Justice, Washington, DC, for appellee.
 D.Md.
 REVERSED AND REMANDED.
 Before RUSSELL and HAMILTON, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Henry Thomas Turpin (Turpin) appeals from the district court's decision granting the government's Rule 60(b) motion seeking to reduce the judgment for improperly withheld income tax refunds awarded to Turpin by a prior district court order. For the reasons set forth below, we reverse and remand with instructions that the district court's order of September 21, 1992, awarding Turpin judgment against the United States for $14,417.28 plus interest and costs be reinstated.
 
 
 2
 * Turpin was an employee of Black Maverick Coal Company, Inc. (Black Maverick), a West Virginia coal mining operation. Black Maverick operated a coal mining facility owned by the Powellton Company in Man, West Virginia. By November 10, 1982, Turpin had become president, secretary, and treasurer and had acquired a 100 percent interest in Black Maverick. Responsible for compiling a statement showing gross wages, Black Maverick computed the gross weekly payroll for its employees and forwarded this information to Powellton, which would deduct amounts for federal and state taxes and remit to Black Maverick a single check for the total net payroll. Black Maverick would then issue individual payroll checks to its employees.
 
 
 3
 On January 9, 1986, the United States, contending that Turpin was responsible for collecting and paying over payroll taxes pursuant to I.R.C. Sec. 6672(a), assessed Turpin $216,375.76 for Black Maverick's withheld, but unpaid, payroll taxes during the last three quarters of 1982 and the first three quarters of 1983. On May 24, 1990, Turpin filed a civil action in the United States District Court for the District of Maryland seeking to recover amounts collected in partial satisfaction of the above assessments against him. On August 27, 1990, the United States filed a counterclaim against the taxpayer for $211,407.48, the original assessment less $4,968.28 in payments which the government had credited toward the assessed liability.
 
 
 4
 Following a two-day jury trial on April 15 and 16, 1991, the jury returned a special verdict. First, the jury determined that Turpin was not responsible for collecting and paying over the withheld taxes during the second and third quarters of 1982, but that he was responsible for collection and payment of the taxes during the last quarter of 1982 and the first three quarters of 1983. Second, the jury found that Turpin did not willfully fail to pay over the withholding taxes due for any of the relevant quarters. Finally, the jury found that Turpin was entitled to a refund of the income tax refunds purportedly withheld from him for the years 1982 through 1988, and the wages seized by the government, in the total amount of $14,417.28.
 
 
 5
 The government moved for judgment notwithstanding the verdict. Granting the motion in part, the district court held as a matter of law that Turpin was "responsible for ... and ... willfully failed to collect, account for, and pay over the trust fund taxes during the third and fourth quarters of 1982 and the first three quarters of 1983."[1] (J.A. 54). Consequently, the district court found that Turpin was liable for those taxes. On August 14, 1991, the district court entered judgment in favor of the United States in the amount of $317,796.82. This amount consisted of the full amount owing on the government's counterclaim for the last two quarters of 1982 and the first three quarters of 1983, plus interest on that amount, less the $4,968.28 Turpin had previously paid, according to the government's calculations.[2] Turpin appealed to this court.
 
 
 6
 On appeal, we reversed the grant of judgment notwithstanding the verdict, finding there was sufficient evidence to support the jury's findings on lack of willfulness. Turpin v. United States, 970 F.2d 1344, 1347-48 (4th Cir.1992). Accordingly, we remanded the case "with instructions to enter judgment for Turpin in accordance with the special verdict of the jury." Id. at 1350 (emphasis added).
 
 
 7
 On remand, the district court directed Turpin's counsel to prepare an order implementing our mandate. Counsel for the government agreed to this proposed order, which the district court entered on September 21, 1992[3].
 
 
 8
 Six months and twenty-eight days later, on April 19, 1993, the government filed a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure seeking to reduce the amount of the September 21, 1992, order from $14,417.28 to $4,968.28, plus interest thereon. On August 25, 1993, the district court entered an order granting the government's motion. First noting that "[s]eemingly, the issue of the amount due Turpin in connection with his claim for the funds withheld by the government was neither presented to, nor decided by, the Fourth Circuit," (J.A. 842), the district court explained that the government's Certificate of Assessments and Payments stating that Turpin had only paid $4,968.28 was presumptively correct. Therefore, the district court held that the government owed Turpin only $4,968.28. Additionally, the district court determined that the government's motion was timely filed, and that "[i]n view of the history of this case, the government's failure to note and to raise its position as to the $4,968.28 versus the $14,417.28, on or before September 21, 1992, or earlier than April 19, 1993, would appear appropriately attributable to mistake, excusable neglect, and/or exceptional circumstances or the like." (J.A. 847). Turpin timely appealed.
 
 II
 
 9
 Initially, we must determine whether the district court followed our mandate in Turpin, 970 F.2d at 1350. A district court, upon receiving the mandate of an appellate court, "may not alter, amend, or examine the mandate, or give any further relief or review, but must enter an order in strict compliance with the mandate." Piambino v. Bailey, 757 F.2d 1112, 1119 (11th Cir.1985), cert. denied, 476 U.S. 1169 (1986) (citing In re Sanford Fork & Tool Co., 160 U.S. 247, 255 (1895)). Although the district court may address those issues not disposed of on appeal, it is bound to follow the appellate court's holdings, both expressed and implied. Cherokee Nation v. Oklahoma, 461 F.2d 674, 678 (10th Cir.), cert. denied, 409 U.S. 1039 (1972). The "mandate rule," is nothing more than a specific application of the "law of the case" doctrine. Greater Boston Television Corp. v. Federal Communications Comm'n, 463 F.2d 268, 279 (D.C.Cir.1971), cert. denied, 406 U.S. 950 (1972).
 
 
 10
 The "law of the case" doctrine holds that an appellate decision on an issue must be followed in later trial court proceedings unless "the presentation of new evidence or an intervening change in the controlling law dictates a different result, or the appellate decision is clearly erroneous and, if implemented, would work a manifest injustice." Piambino, 757 F.2d at 1120. The law of the case is a rule of discretion and not a jurisdictional requirement. Smith v. Bounds, 813 F.2d 1299, 1304 (4th Cir.1987) (citing Piambino, 757 F.2d at 1120), cert. denied, 488 U.S. 869 (1988). Its purpose is designed to bring an end to litigation and to discourage "panel shopping." Piambino, 757 F.2d at 1120. While the law of the case doctrine does not govern issues which the appellate court did not address, Smith, 813 F.2d at 1306, it does apply to all issues decided expressly or by necessary implication. United States v. White, 846 F.2d 678, 684 (11th Cir.), cert. denied, 488 U.S. 984 (1988); Piambino, 757 F.2d at 1120; Stamper v. Baskerville, 724 F.2d 1106, 1108 (4th Cir.1984).
 
 
 11
 Although a district court is obligated to follow the mandate rule, the Supreme Court has recognized that, in some instances, a subsequent Rule 60(b) motion may allow the district court to deviate from the mandate. Standard Oil Co. of California v. United States, 429 U.S. 17, 19 (1976) (citations omitted). Therefore, a district judge is not flouting the mandate by acting on a motion raising "later events" after trial because "the appellate mandate relates to the record and issues then before the court and does not purport to deal with possible later events." Id.
 
 
 12
 In the proceedings below, the government sought relief from judgment pursuant to Rule 60(b) contending there was an "error in the amount of the judgment which was entered on September 21, 1992." (J.A. 751). Such an alleged basis for relief lacks the requisite subsequent "error" or "mistake" because it presents nothing which our first Turpin decision did not address. Consequently, there is nothing which would allow the district court to deviate from our mandate.
 
 
 13
 The government argues that the issue of the amount of the refund due Turpin was neither addressed nor decided in our previous Turpin decision. Turpin I, 970 F.2d 1344 (4th Cir.1992). We disagree. In Turpin I, we decided by necessary implication that Turpin was due the $14,417.28 awarded by the jury. First, we found that, "[b]ecause the jury found that Turpin had not willfully failed to collect, account for, and pay over the taxes during any of the six quarters, Turpin was entitled to an award of $14,417.28 and an abatement of the tax assessment against him." Id. at 1346. Second, we remanded with the following instructions:
 
 
 14
 The district court's grant of judgment notwithstanding the verdict is accordingly reversed, and the case is remanded with instructions to enter judgment for Turpin in accordance with the special verdict of the jury.
 
 
 15
 970 F.2d at 1350 (emphasis added). Accordingly, we clearly addressed the issue of the amount due Turpin in Turpin I.[4] Although the district court opined that the government failed to raise its position as to the $4,968.28 versus the $14,417.28 on or before September 21, 1992, or earlier than April 19, 1993, the record directly contradicts that finding. The issue was noted and raised at trial. The jury considered the "amount of refund" evidence in arriving at its $14,417.28 award in favor of Turpin. We can find no "new evidence or an intervening change in the controlling law" to dictate a different result. Piambino, 757 F.2d at 1120. Thus, we are compelled to find that the district court violated the mandate rule by granting the government's Rule 60(b) motion.
 
 III
 
 16
 The decision to grant Rule 60(b) relief from a final order is committed to the sound discretion of the district court. Accordingly, we review a Rule 60(b) determination under the abuse of discretion standard. International Longshoreman's Ass'n, AFL-CIO v. Cataneo, Inc., 990 F.2d 794, 800 (4th Cir.1993); Transportation, Inc. v. Mayflower Svcs., Inc., 769 F.2d 952, 954 (4th Cir.1985).
 
 
 17
 Even if the district court did not violate the mandate rule, we find that the district court abused its discretion in granting relief pursuant to Rule 60(b), which provides in pertinent part:
 
 
 18
 On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
 
 
 19
 (1) Mistake, inadvertence, surprise, or excusable neglect;
 
 
 20
 (2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
 
 
 21
 (3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) The judgment is void;
 
 
 22
 (5) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
 
 
 23
 (6) Any other reasons justifying relief from the operation of the judgment.
 
 
 24
 Rule 60(b) further explains that "[t]he motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken." We have imposed supplemental requirements on a party attempting to qualify for relief from a judgment or an order under Rule 60(b). A motion must: (1) be timely, (2) rest on a meritorious defense, (3)show an absence of prejudice to the opposing party, and (4) demonstrate exceptional circumstances. McLawhorn v. John W. Daniel and Co., Inc., 924 F.2d 535, 538 (4th Cir.1991); Werner v. Carbo, 731 F.2d 204, 206-07 (4th Cir.1984); Compton v. Alton Steamship Co., 608 F.2d 96, 102 (4th Cir.1979). Once the movant has made such a showing, he must then proceed to satisfy one or more of Rule 60(b)'s six grounds for relief from judgment. Aliff, 914 F.2d at 44. While the government's motion may have lacked several of the requirements necessary for a successful Rule 60(b) motion, we address two requirements which are absent from the present case and which support our conclusion that the granting of the motion constituted an abuse of discretion.
 
 
 25
 First, the government cannot point to any single exceptional circumstance which justifies the granting of the Rule 60(b) motion. Instead, it merely recites the procedural history of the case and then states: "The government, upon realizing their mistake, moved for relief from the order, and the district court granted the motion. Clearly, such a case involves 'exceptional circumstances,' and the district court did not abuse its discretion in reaching such a conclusion." (Appellee's Br. at 30-31). We discern no new evidence and no new law that would constitute an exceptional circumstance necessary to justify Rule 60(b) relief.
 
 
 26
 Second, we cannot agree with the district court that the government's failure to note earlier the asserted error in the district court's order was attributable to mistake, inadvertence, or excusable neglect. After we reversed the judgment notwithstanding the verdict granted by the district court and remanded with instructions to reinstate the verdict of the jury, the government agreed to the order granting the refund of $14,417.28. Although the government seeks to reduce that amount, it has pointed to no facts establishing mistake, inadvertence, or excusable neglect. In fact, it merely states, the government's failure to note and to raise its position as to the $4,968.28 ... would appear appropriately attributable to mistake, excusable neglect, and/or exceptional circumstances or the like." (Appellee's Br. at 31).
 
 
 27
 Moreover, the district court appears to operate under the erroneous assumption that the government did not raise its position as to the $4,968.28 versus the $14,417.28 on or before September 21, 1992. As discussed earlier, however, that finding is refuted by the record. The government submitted such evidence at trial. (J.A. 17, 37-38).
 
 IV
 
 28
 In summary, for the reasons stated above, we hold that the district court failed to follow our mandate. In any event, the district court abused its discretion in granting the government's Rule 60(b) motion. Accordingly, the judgment of the district court is reversed and the case is remanded with instructions to the district court to reinstate its order of September 21, 1992, granting Turpin judgment against the United States in the amount of $14,417.28 with interest and costs as therein provided.
 
 REVERSED AND REMANDED WITH INSTRUCTIONS
 
 
 [1]
 The district court did not overturn the jury's verdict with respect to the second quarter of 1982
 
 
 [2]
 Turpin claimed to have paid $14,417.28 to the government, the same amount awarded him by the jury
 
 
 [3]
 Specifically, the order read that it is:
 ORDERED AND ADJUDGED that judgment be and is hereby entered in favor of Plaintiff Henry Thomas Turpin against Defendant United States of America in accordance with the special verdict of the jury dated April 16, 1991; and it is further
 ORDERED AND ADJUDGED that Plaintiff is awarded the principal sum of $14,417.28 for taxes overpaid by him, plus interest on the periodic overpayments comprising such principal sum as authorized by 28 U.S.C. Sec. 2411 and 26 U.S.C. Sec. 6621 which interest shall be calculated by the Internal Revenue Service in accordance with the prescribed statutory rates and customary procedures, plus all such costs and expenses as have been or may be properly taxed by the Clerk of this Court and the Clerk of the United States Court of Appeals for the Fourth Circuit.
 (J.A. 825-26).
 
 
 [4]
 Turpin also makes a res judicata argument. Because, however, this is the same action and not a subsequent suit, res judicata is inapplicable here. See Aliff v. Joy Mfg. Co., 914 F.2d 39, 42 (4th Cir.1990)