**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-2326**

ROBERT A. NEWBILL,

             Plaintiff - Appellant,

        v.

UNITED STATES OF AMERICA,

             Defendant - Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Gerald Bruce Lee, District
Judge.  (1:10-cv-00041-GBL-TCB)

Submitted:  June 14, 2011              Decided:  July 29, 2011

Before TRAXLER, Chief Judge, and NIEMEYER and KING, Circuit
Judges.

Affirmed in part, vacated in part, and remanded by unpublished
per curiam opinion.

Raymond D. Battocchi, Charles Davenport, GABELER BATTOCCHI &
POWELL, PC, McLean, Virginia, for Appellant.  Gilbert S.
Rothenberg, Acting Deputy Assistant Attorney General, Bridget M.
Rowan, Kathleen E. Lyon, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C.; Neil H. MacBride, United States Attorney,
Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Robert A. Newbill appeals from the district court's order granting summary judgment to the United States ("the government") on Newbill's claim for a refund of the penalty assessed against him under 26 U.S.C. § 6672 for payroll withholding taxes owed by New Construction, Inc. ("NCI"), and directing the entry of a judgment against him for the disputed amount. For the reasons that follow, we affirm the district court's award of summary judgment to the government; however, we vacate the monetary judgment against Newbill.

I.

The facts material to whether Newbill is liable under § 6672 are undisputed. Newbill was the president, treasurer, and majority shareholder of NCI, a construction company with over 300 employees and annual revenues of approximately $40,000,000 as of late 2003. As president of NCI, Newbill was responsible for many aspects of NCI's operations: he controlled employee compensation; had signature authority on NCI's bank accounts; made day-to-day financial decisions for NCI; and negotiated and executed contracts for NCI.

Among the agreements that Newbill entered on behalf of NCI was a promissory note in favor of Wachovia Bank that supplied NCI with a $2,500,000 line of credit. The note

2

provided that upon NCI's default, Wachovia could terminate the line of credit, require immediate repayment of the loan, and foreclose its security interest in the bank account that NCI maintained with Wachovia. Newbill also executed a surety agreement with Atlantic Mutual Companies under which Atlantic guaranteed NCI's performance of certain construction contracts. In the event that NCI was unable to meet its obligations under these contracts, the agreement essentially required NCI to assign its interests in all of its assets to Atlantic and permitted Atlantic to take joint control over NCI's affairs.

In November 2003, NCI was "in difficult financial straits." J.A. 90. On November 21, 2003, Wachovia terminated NCI's line of credit and seized the balance of NCI's Wachovia account pursuant to the terms of the promissory note. From that point forward, Wachovia only released funds to NCI for pre-approved purposes. On November 24, 2003, Atlantic assumed joint control over NCI's assets and operations under the terms of the surety agreement. Thereafter, all NCI receipts were to be applied toward NCI's obligations under the surety agreement. In December 2003, NCI and Atlantic entered into a "Joint Control Trust Agreement," which memorialized the terms under which the companies had operated since November 24, 2003. The joint control agreement stipulated the procedure for payment of NCI's expenses, including payroll and withholding taxes. The

3

agreement also recognized NCI's account with Cardinal Bank as the joint control trust checking account. All charges against the Cardinal account required a signature from both NCI and Atlantic; Newbill was a signatory on the account.

Between November 26, 2003 and January 6, 2004, NCI failed to remit to the IRS taxes withheld from employees' wages for five payroll periods. Newbill first became aware of these unpaid taxes on December 17, 2003. After that date, Newbill signed over $100,000 worth of checks to non-governmental creditors that were drawn on the Cardinal account. By early 2004, NCI had ceased operations and entered bankruptcy proceedings.

The Internal Revenue Service ("IRS") subsequently assessed Newbill a 100% penalty under 26 U.S.C. § 6672 for $141,093.40—the total amount of withholding taxes owed by NCI. Newbill paid a portion of the assessment and commenced the instant suit for a refund of $99,566.43, claiming that he was not a "responsible person" who willfully failed to pay employment withholding taxes within the meaning of § 6672. The government and Newbill filed cross motions for summary judgment. The district court denied Newbill's motion, granted summary judgment to the government, and entered judgment against Newbill in the amount of $99,566.43. Newbill appeals the district court's ruling, arguing that the district court erred by: (1)

holding that Newbill was responsible for the payment of the taxes in question; (2) holding that Newbill willfully failed to pay those taxes; and (3) entering a judgment against Newbill for the disputed amount.

## II.

We review a district court's grant of summary judgment to the government de novo, resolving all factual disputes in favor of the taxpayer. See Erwin v. United States, 591 F.3d 313, 319 (4th Cir. 2010). "[T]o defeat summary judgment, the taxpayer (like any other litigant) must identify an error of law or a genuine issue of material fact; the taxpayer cannot create a material fact by reliance on conclusory allegations or bare denials." Id. Although the facts are crucial in a § 6672 analysis, "extensive caselaw narrowly constrains a factfinder's province in § 6672 cases." Id. at 320 (quoting Barnett v. IRS, 988 F.2d 1449, 1454 (5th Cir. 1993)) (internal quotation marks and alterations omitted). Therefore, "in the absence of disputed material facts, summary judgment represents a favored mechanism to secure the 'just, speedy, and inexpensive determination'" of § 6672 liability. Plett v. United States, 185 F.3d 216, 223 (4th Cir. 1999) (quoting Fed. R. Civ. P. 1).

III.

The Internal Revenue Code requires employers to withhold certain taxes from the wages of their employees and pay the withheld sums to the United States. See 26 U.S.C. §§ 3402(a), 3102(a). Courts commonly refer to these amounts as "trust fund taxes" because the employer holds the withheld taxes in trust for the United States. See 26 U.S.C. § 7501(a); Slodov v. United States, 436 U.S. 238, 243 (1978); Plett, 185 F.3d at 218. The funds "exist for the exclusive use of the government, not the employer," and may not be used to pay the employer's business expenses. Erwin, 591 F.3d at 319; see also Brewery, Inc. v. United States, 33 F.3d 589, 593 (6th Cir. 1994). If an employer withholds trust fund taxes but fails to remit them to the government, § 6672 imposes personal liability for the amount of taxes owed upon "those officers or employees (1) responsible for collecting, accounting for, and remitting payroll taxes, and (2) who willfully fail to do so."[1] Plett, 185 F.3d at 218; see

---

[1] Section 6672 provides, in pertinent part:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

(Continued)

6

also 26 U.S.C. § 6672(a). After the government assesses a taxpayer for § 6672 liability, the taxpayer has the burden of proof as to both elements at trial. See O'Connor v. United States, 956 F.2d 48, 50 (4th Cir. 1992). The taxpayer must therefore prove that he was not a responsible person and that any failure to pay the taxes was not willful. See Erwin, 591 F.3d at 319.

Courts refer to a party contemplated in the first element of § 6672 liability as a "responsible person." O'Connor, 956 F.2d at 50. This term "is broad and may include many individuals connected with a corporation;" therefore "more than one individual may be the responsible person for an employer." Id. The "key element" for ascertaining whether a party is a responsible person "is whether that person has the statutorily imposed duty to make the tax payments." Id. at 51. This inquiry focuses on "whether an officer or employee so participated in decisions concerning payment of creditors and disbursement of funds that he effectively had the authority—and hence a duty—to ensure payment of the corporation's payroll taxes." Plett, 185 F.3d at 219 (internal quotation marks and alterations omitted). "Put another way, the essential inquiry

—————————————————

26 U.S.C. § 6672(a).

7

is whether a person has significant, but not necessarily exclusive, authority over corporate finances or management decisions." Erwin, 591 F.3d at 321. We have developed a non-exhaustive list of factors to inform our determination of responsible person status under § 6672: "whether the employee (1) served as an officer or director of the company; (2) controlled the company's payroll; (3) determined which creditors to pay and when to pay them; (4) participated in the corporation's day-to-day management; (5) had the ability to hire and fire employees; and (6) possessed the power to write checks." Id.; see also Plett, 185 F.3d at 219; O'Connor, 956 F.2d at 51.

The second element of § 6672 liability—willful failure to pay trust fund taxes—requires either "knowledge of nonpayment or reckless disregard of whether the payments were being made." Turpin v. United States, 970 F.2d 1344, 1347 (4th Cir. 1992) (internal quotation marks omitted). "A responsible person's intentional preference of other creditors over the United States establishes the element of willfulness under § 6672(a)." Plett, 185 F.3d at 219. "[S]uch an intentional preference occurs when the responsible person knows of or recklessly disregards an unpaid deficiency." Erwin, 591 F.3d at 325; see also Turpin, 970 F.2d at 1347. "[W]hen a responsible person learns that withholding taxes have gone unpaid . . . he has a duty to use

8

all current and future unencumbered funds available to the corporation to pay those back taxes." Erwin, 591 F.3d at 326.

Mindful of these principles, we turn to the substance of Newbill's appeal. We briefly consider his three primary arguments in turn.[2]

IV.

A.

Newbill first contends that the district court erred by holding as a matter of law that Newbill was responsible for the payment of NCI's payroll taxes. We disagree.

The undisputed facts of this case demonstrate that Newbill was a "responsible person" for § 6672 purposes with respect to NCI's trust fund taxes. The district court's analysis of the responsible person factors correctly established that five of the six factors are present here: (1) as president and treasurer of NCI, Newbill was an officer of the company; (2) Newbill controlled NCI's payroll because he used his signature authority on NCI's bank accounts to issue payroll checks on several occasions during the relevant period; (3) Newbill

---

[2] Our disposition of Newbill's substantive contentions obviates the need to address Newbill's arguments regarding attorneys' fees.

determined which creditors to pay because he signed and disbursed payroll checks and checks to other creditors throughout the relevant period; (4) Newbill actively participated in the day-to-day management of NCI; and (5) Newbill had, and exercised, the power to sign checks from NCI's bank accounts. Although not every factor points to Newbill's responsibility, most do. We are therefore satisfied that Newbill "effectively had the authority—and hence a duty—to ensure payment of [NCI]'s payroll taxes." Plett, 185 F.3d at 219.

Newbill's argument that he had no "significant authority" over NCI's management or finances after Wachovia seized the balance of NCI's Wachovia account and Atlantic assumed joint control over NCI's operations is unavailing. See Erwin, 591 F.3d at 321. Both Wachovia and Atlantic acquired the right to exercise control over NCI's finances through voluntary contractual agreements that Newbill personally negotiated and willingly executed on behalf of NCI. The agreements delegated authority over certain aspects of NCI's affairs to Wachovia and Atlantic in the event that NCI was unable to meet its obligations. However, "delegation will not relieve one of responsibility" in the § 6672 context. Id. at 322 (internal quotation marks omitted); see also id. at 321 (noting that responsible person's authority over company's management or

10

finances need not be exclusive); Bradshaw v. United States, 83 F.3d 1175, 1181 (10th Cir. 1995) (holding that company president, who negotiated company's lending agreement with bank, could not avoid responsibility under § 6672 "by ceding to the Bank the right to exert financial control over [the company]" pursuant to that agreement); Commonwealth Nat'l Bank of Dallas v. United States, 665 F.2d 743, 757 (5th Cir. 1982) (holding that company president was responsible for payment of company's trust fund taxes notwithstanding lending bank's "extensive" control over payment of creditors).

Furthermore, although Newbill did not possess unilateral authority to issue checks after Atlantic gained joint control, neither did Atlantic. Signatures from both Newbill and Atlantic were required for Cardinal Bank to honor checks drawn on NCI's joint control trust account. Newbill thus could have exercised considerable power over the payment of NCI's creditors by simply withholding his countersignature. "[A] person's 'duty' under § 6672 must be viewed in light of his power to compel or prohibit the allocation of corporate funds." Godfrey v. United States, 748 F.2d 1568, 1576 (Fed. Cir. 1984) (emphasis added) (holding that where person has authority to sign company checks or "prevent their issuance by denying a necessary signature . . . he will generally be held 'responsible'" under § 6672); see also United States v. Kim, 111 F.3d 1351, 1362 (7th

11

Cir. 1997) (holding that responsibility under § 6672 only requires that "the individual could have impeded the flow of business to the extent necessary to prevent the corporation from squandering the taxes it withheld from its employees" (internal quotation marks omitted)). For these reasons, we conclude that Newbill was responsible for the payment of NCI's trust fund taxes.

B.

Newbill next argues that the district court erred by holding as a matter of law that he willfully failed to pay NCI's trust fund taxes. We disagree.

The record, viewed in the light most favorable to Newbill, demonstrates that Newbill had actual knowledge of NCI's tax deficiencies on December 17, 2003. As of that date, Newbill had a duty to use all of NCI's unencumbered funds to pay the overdue taxes. See Erwin, 591 F.3d at 326. Instead of ensuring payment of the taxes however, Newbill signed over $100,000 worth of checks to NCI employees and creditors after December 17, 2003. It is undisputed that Newbill could have prevented this allocation of NCI funds by withholding his signature from the checks. Thus, by signing the checks to non-governmental creditors after learning of NCI's unpaid trust fund taxes, Newbill intentionally preferred those creditors over the United

12

States. <u>See</u> <u>Plett</u>, 185 F.3d at 219. We therefore conclude as a matter of law that Newbill willfully failed to pay NCI's trust fund taxes.

## C.

Newbill also contends that the district court erred by entering a judgment against him for the disputed amount of $99,566.43, which he had already paid, thus effectively requiring him to pay that portion of the penalty twice. We agree.

The government acknowledges that Newbill paid the IRS approximately $99,000 towards the assessment prior to commencing this action for a refund. The government also admits that it did not attempt to collect the balance of the assessment in the instant suit. Accordingly, the government concedes that the district court's "judgment should be amended to provide, simply, for the dismissal of taxpayer's refund suit" rather than the entry of a monetary judgment against Newbill. Br. of Appellee at 63 n.18. We therefore conclude that it was error for the district court to enter judgment against Newbill in the amount of $99,566.43.

V.

For the foregoing reasons we affirm the district court's award of summary judgment to the United States and vacate the judgment against Newbill in the amount of $99,566.43. We remand the case to the district court for the limited purpose of entry of final judgment consistent with this opinion. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED