In the

# United States Court of Appeals

## For the Seventh Circuit

No. 06-4082

CHARLES E. JEFFERSON,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 04 C 50291—**Philip G. Reinhard,** *Judge*.

ARGUED JANUARY 18, 2008—DECIDED OCTOBER 8, 2008

Before BAUER, WILLIAMS, and SYKES, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Charles E. Jefferson previously served as the president of the board of directors of a day care center that owed substantial back taxes to the Internal Revenue Service. After Jefferson was personally assessed for the back taxes, he filed suit to recover the amounts he paid to the IRS. The district court granted the government's motion for summary judgment, finding that Jefferson could be assessed for the day care's tax liability. Because Jefferson is a "responsible person" under 26 U.S.C.

§ 6672(a) who "willfully" failed to pay the day care's taxes, we agree with the district court, and we affirm.

## I. BACKGROUND

Jefferson serves as a state representative in the Illinois House of Representatives, and until 2001, he served as president of the board of directors of New Zion Day Care Center, Inc., a Rockford, Illinois day care facility. Jefferson filed suit against the IRS to recover a trust fund penalty of $41,432 that the IRS assessed and collected from him after New Zion failed to remit federal payroll taxes to the IRS for the second, third, and fourth quarters of 2000, and the first and second quarters of 2001.

Jefferson's position as board president from the early 1980s until June 2001 was voluntary and uncompensated. He and the other board members were responsible for the direction of the day care, while Velma Hayes, the paid director of New Zion from 1982 until 2001, ran New Zion's day-to-day operations. As a board member, Jefferson had the authority to direct and authorize payment of New Zion's bills, to authorize payment of its federal tax deposits, to determine its financial policy, and to obtain loans for New Zion, such as the loan he obtained in 1998 for a new day care building. Jefferson was also a signatory on New Zion's bank accounts and co-signed checks on behalf of New Zion.

The day care was funded in part by the United Way organization. In February 1998, the Executive Director of the United Way informed Jefferson that New Zion was not

properly paying its payroll taxes. After New Zion lost its United Way funding, partly because of the unpaid taxes, Jefferson secured a loan on New Zion's behalf so the day care could pay the delinquent taxes. On August 31, 2000, Jefferson co-signed two checks payable to the IRS, indicating that the checks were for penalty and interest. After the 1998 delinquency, the board retained an accounting firm and ordered Hayes to pay any taxes that New Zion owed to the IRS.

By 2000, New Zion's financial condition was precarious, and it failed to pay income and FICA taxes for its employees from April 2000 to June 2001. Hayes informed the board, including Jefferson, at its monthly meetings that the day care was unable to pay its bills and tax liabilities. She also provided the board members with a copy of her "director's report" and a "financial report," and she maintained a file with the financial reports at New Zion's office. Jefferson was aware of this file and instructed board members to review the financial reports at each meeting before they were accepted by a majority vote.

On May 13, 2002, the IRS made assessments against Jefferson and Hayes for the delinquent tax payments. Jefferson filed suit in the district court to reclaim the $41,432 he paid to the IRS. The court denied Jefferson's motion for summary judgment and granted the government's motion for summary judgment, finding that Jefferson was a "responsible person" under 26 U.S.C. § 6672 and that he "willfully" failed to pay taxes. The court also found that Jefferson did not qualify for the "honorary member" exception of section 6672(e) because he was not

serving in an honorary capacity at New Zion. Finally, the court determined that section 904(b) of Public Law 104-168 did not preclude the government from assessing tax liabilities although it failed to develop materials explaining the circumstances in which Jefferson incurred the tax liability. Jefferson appeals.

## II. ANALYSIS

We review the district court's grant of summary judgment *de novo*. *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletic Dep't*, 510 F.3d 681, 687 (7th Cir. 2007). When, as in this case, the parties have filed cross-motions for summary judgment, "we construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Samuelson v. Laporte Cmty. Sch. Corp.*, 526 F.3d 1046, 1051 (7th Cir. 2008). Summary judgment is appropriate only when the materials before the court demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### A. Jefferson was liable for New Zion's tax liability because Jefferson was a responsible person whose behavior was willful.

#### 1. Jefferson is a "responsible person" under section 6672.

26 U.S.C. § 6672(a) makes any person who is responsible for collecting, accounting for, and paying payroll taxes but

who "willfully" fails to do any of these things "liable to a penalty equal to the total amount of tax evaded, or not collected, or not accounted for and paid over." An individual is considered "responsible" if "he retains sufficient control of corporate finances that he can allocate corporate funds to pay the corporation's other debts in preference to the corporation's withholding tax obligations." *Bowlen v. United States*, 956 F.2d 723, 728 (7th Cir. 1992) (internal citation omitted). However, a person need not necessarily have "exclusive control over the disbursal of funds or have the final word as to which creditors should be paid so long as he has significant control" because "the key to liability under section 6672 is the power to control the decision-making process by which the employer corporation allocates funds to other creditors in preference to its withholding tax obligations." *Id.* (internal citations omitted).

Jefferson argues that he is not a "responsible" person because he did not run the day-to-day operations of New Zion nor did he handle its financial affairs. We have held that "merely because a corporate officer has check-signing responsibilities and his corporation is in financial trouble, it does not follow that he can be held liable for any and all failures to pay withholding taxes," *Wright v. United States*, 809 F.2d 425, 428 (7th Cir. 1987), but Jefferson had significant involvement in New Zion's financial affairs that included more than simply writing checks. He was board president, and had secured loans for New Zion and directed payment of its taxes in the past. *See Domanus v. United States*, 961 F.2d 1323, 1324-25 (7th Cir. 1992) (member of the board of directors who was

responsible for directing payment of the taxes held to be a responsible person). He retained an accounting firm to review the day care's financial situation, and he also reviewed the day care's financial reports at each meeting. *See Barnett v. IRS*, 988 F.2d 1449, 1457 (5th Cir. 1993) (president of a corporation who asked for monthly reports on the company's financial situation is a "responsible person" despite president's geographical separation from the office where payroll and tax matters are handled). Even though Jefferson was not involved in the day-to-day operations of the day care, he had significant involvement in the financial affairs of the day care sufficient to make him a "responsible person."[1]

---

[1] Jefferson points to our decision in *United States v. Running*, 7 F.3d 1293 (7th Cir. 1993), for the proposition that we can only consider Jefferson's behavior in the relevant fiscal quarters in which liability was assessed in determining if Jefferson is a "responsible person." In *Running,* however, the defendant was employed at the institution responsible for the taxes for only one month during the relevant fiscal period. *See id.* at 1298 (finding that the defendant was a responsible person despite his brief tenure). It made sense for us to consider only the time in which Running was employed by the institution responsible for the taxes in determining if Running was a responsible person. In contrast, Jefferson was involved with the day care for over twenty years and unlike the defendant in *Running*, there is no evidence that Jefferson's involvement with managing the day care's finances ceased at any time before or during the relevant fiscal period. *Cf. id.* at 1299 (finding that the defendant's behavior was not willful because the government produced no

(continued...)

### 2.    Jefferson's behavior was willful.

We have defined the term "willful" in the context of section 6672 to mean "voluntary, conscious and intentional—as opposed to accidental—decisions not to remit funds properly withheld to the Government." *Domanus*, 961 F.2d at 1324. The record indicates that the day care was, in some respect, trying to address the issue of the taxes. Jefferson hired an accounting firm after the initial 1998 delinquency and directed Hayes to pay whatever taxes were owed.

Nevertheless, a person's behavior is also "willful" under the statute when that person "recklessly disregarded a known risk that the taxes were not being paid over." *United States v. Kim*, 111 F.3d 1351, 1357 (7th Cir. 1997). There is substantial evidence in the record that Jefferson, despite his efforts to address earlier tax deficiencies, ignored later signs that the taxes were still unpaid. Jefferson claims that he was unaware that the taxes were not being paid and in fact, only signed two checks out of the more than 975 checks issued by New Zion during the relevant fiscal quarters. Those two checks, however, were to the IRS for back taxes/penalties. Indeed, the record suggests that Jefferson was not only aware of New Zion's history of tax payment problems, but he was also aware of its current

---

[1] (...continued)
evidence that Running was responsible for preparing or filing the company's tax returns once he left). Moreover, Jefferson wrote two checks to the IRS for penalties and back taxes *during* the relevant fiscal period.

state—Hayes generated monthly reports that were given to Jefferson and the other board members at each meeting, reports that showed a steadily increasing tax liability.[2] Moreover, Hayes repeatedly informed the board that the day care was having difficulty paying its bills, including its tax obligations.

By failing to heed these warnings, Jefferson recklessly disregarded a known risk that the taxes were not being paid. It is irrelevant whether Jefferson knew the taxes were going unpaid, as he claims. *See id.* at 1357-58 (where a responsible person was deemed to have acted "willfully" in his failure to pay taxes for past quarters, even though he was unaware at that time that the taxes were going unpaid). There is sufficient evidence in the record that he disregarded a known risk given the day care's past trouble with the IRS, Hayes's monthly reports to the board that

---

[2] Jefferson argues that there is some dispute in the record whether Hayes generated monthly financial reports to the board during the relevant fiscal periods because there is no evidence in the record that the board voted on and approved any reports during that time period. It is not clear whether Jefferson is arguing that these reports were never prepared or simply never generated to the board during the relevant time period. However, Jefferson admitted during his deposition that the accounting firm prepared financial reports every three months and that these reports would have been available to the board. Furthermore, Jefferson stated that at the time that he wrote the checks to the IRS for back taxes and penalties, which was during the relevant fiscal periods, he would have been aware that there were outstanding liabilities due to the IRS.

the day care could not cover its expenses, and the reports generated by the accounting firm detailing the day care's deteriorating financial situation. *Wright*, 809 F.2d at 428 ("if a responsible officer knows that the corporation has recently committed such a delinquency and knows that since then its affairs have continued to deteriorate, he runs the risk of being held liable if he fails to take any steps either to ascertain, before signing checks, what the state of the tax withholding account is, or to institute effective financial controls to guard against nonpayment"); *Running*, 7 F.3d at 1299 ("Recklessness may also be established if a responsible person fails 'to correct mismanagement after being notified that the withholding taxes have not been duly remitted.'") (citation omitted).

Like all board members, Jefferson had access to the files showing the steadily increasing tax liability, but beyond Jefferson's directive to Hayes to pay the taxes, there is no evidence that the board took steps or implemented procedures to ensure that the taxes were actually being paid. These factors make Jefferson's failure to pay taxes "willful" as a matter of law. *See id.*

### B. Jefferson is not exempt from the trust fund recovery penalty.

Jefferson argues that he should not have been assessed for the trust fund penalty because he was an honorary and voluntary board member for New Zion who was not involved in the day care's day-to-day operations. 28 U.S.C. § 6672(e) provides that:

> No penalty shall be imposed by subsection (a) on
> any unpaid, volunteer member of any board of
> trustees or directors of an organization exempt
> from tax under Subtitle A if such member—
>
> > (1)  is solely serving in an honorary capacity,
> >
> > (2)  does not participate in the day-to-day or financial operations of the organizations, and
> >
> > (3)  does not have actual knowledge of the failure on which such penalty is imposed.

While there is not much caselaw discussing this subsection of the statute, there is considerable overlap in determining if a person is an "honorary member" under section 6672(e) and determining if a person is "responsible" under section 6672(a). By definition, an individual serving in an honorary capacity and therefore exempt from tax liability cannot be a responsible person. *See* 28 U.S.C. § 6672(e) (stating that individuals who do not participate in the "financial operations of the organizations" are exempt from tax liability); *Bowlen*, 956 F.2d at 728 (responsible person retains "sufficient control of corporate finances"). Furthermore, it is undisputed that Jefferson had control over whether the taxes were paid which, as discussed above, undermines his argument that he did not participate in the financial operations of the day care. Given Jefferson's power over the day care's financial situation (co-signatory on checks, approval of financial statements, ability to get loans), it is clear that he was not serving

solely in an honorary capacity as president of the board of directors.

Jefferson also claims that he did not have "actual knowledge of the failure on which such penalty is imposed," but even if true, this still does not bring him within the purview of section 6672(e). His failure to implement adequate mechanisms to ensure that the taxes were being paid and his reckless disregard of Hayes's warnings that the day care's bills were not being paid are actions that led to the injury that the government complains of here. The term "honorary" suggests a lack of power, a lack of responsibility, and a corresponding lack of ability to do harm—factors that do not apply to the instant case.

### C.     The IRS is not estopped from assessing the tax against Jefferson.

Jefferson argues that the government's failure to comply with section 904(b) precludes application of the penalty under section 6672(a). The district court rejected this argument on the grounds that the language of section 904(b) does not place any restrictions on section 6672(a). Section 904(b) reads, in pertinent part:

> (1) The Secretary of the Treasury . . . shall take such actions as may be appropriate to ensure that employees are aware of their responsibilities under the Federal tax depository system, the circumstances under which employees may be liable for the penalty imposed by section 6672 of the Internal Revenue Code of 1986, and the responsibility to

promptly report to the Internal Revenue Service any failure referred to in subsection (a) of such section 6672. Such actions shall include—

> (A) printing of a warning on deposit coupon booklets and the appropriate tax returns that certain employees may be liable for the penalty imposed by such section 6672, and

> (B) the development of a special information packet.

(2) Development of explanatory materials.— The Secretary shall develop materials explaining the circumstances under which board members of tax-exempt organizations (including voluntary and honorary members) may be subject to penalty under section 6672 of such Code. Such materials shall be made available to tax-exempt organizations.

104 P.L. 168, 904(b)(1)-(2). It is undisputed that the Secretary has not developed the requisite materials as required by section 904(b)(2); the issue is whether this is a condition precedent to the government's collection of back taxes under section 6672(a).

"When interpreting statutes, 'we give words their plain meaning unless doing so would frustrate the overall purpose of the statutory scheme, lead to absurd results, or contravene clearly expressed legislative intent.'" *Gillespie v. Equifax Info. Servs., LLC*, 484 F.3d 938, 941 (7th Cir. 2007) (citing *United States v. Davis*, 471 F.3d 783, 787 (7th

Cir. 2006) (internal citation omitted)). The language of section 904(b)(2) is written using the mandatory term "shall" ("The Secretary shall develop materials . . .") which means that the promulgation of these materials was not optional. *See Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518, 2532 (2007) ("As used in statutes . . . this word [shall] is generally imperative or mandatory") (citing Black's Law Dictionary 1375 (6th ed. 1990)); *Pittway Corp. v. United States*, 102 F.3d 932, 934 (7th Cir. 1996) ("All statutory interpretation begins with the language of the statute itself, and where 'the statute's language is plain, the sole function of the courts is to enforce it according to its terms.'") (citing *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241(1989) (internal citation and quotation marks omitted)).

In *In re Matter of Carlson*, 126 F.3d 915, 922 (7th Cir. 1997), which the district court relied on, the plaintiffs claimed that the cost of their son's medical care constituted a reasonable cause that excused payment of a tax penalty. *Id.* In support of this proposition, the plaintiffs relied on the IRS manual, which discussed circumstances in which it may be appropriate for the IRS to delay the collection of a penalty. *Id.* We rejected this argument, holding that the rules adopted for the internal administration of the IRS are not for the protection of the taxpayer so noncompliance with the IRS manual does not render the action of the IRS invalid. *Id.* The provision here, however, is different. Styled the "Taxpayer Bill of Rights 2" and passed in 1996, this statute was intended to provide further protections to taxpayers by establishing the Office of the

Taxpayer Advocate and provide for greater protections for taxpayers in a host of different areas. 104 P.L. 168 (1996).

Even though section 904(b) was adopted for the protection of the taxpayer, we decline to adopt a blanket rule that the IRS's failure to comply with section 904(b) automatically renders its actions invalid. Such a rule would estop the IRS from collecting an otherwise lawful penalty from individuals who were not prejudiced by the IRS's failure to promulgate these materials. In *Pittway*, for example, the IRS failed to pass regulations interpreting a statute after a mandate to do so from Congress fifteen years earlier, but we held that the plaintiff was still liable under the plain language of the statute. 102 F.3d at 936. We noted, however, that "in a statute less clear on its face, failure to promulgate regulations as Congress orders could result in a provision not enforceable due to the Secretary's failure." *Id.* To avoid circumventing the IRS's lawful functions, we have required that the taxpayer show prejudice where the IRS has violated its regulations or congressional statutes in attempting to collect taxes or penalties. *See In re Carlson*, 126 F.3d at 922 (adhering to the general principle that "[p]rocedures in the Internal Revenue Manual . . . do not confer rights on taxpayers" but finding that there may be circumstances in which undue hardships, because of the IRS's lapse, may justify a person's failure to pay taxes); *see also Philadelphia & Reading Corp. v. Beck*, 676 F.2d 1159, 1163 (7th Cir. 1982) (finding that assessments made against a taxpayer should be enjoined where the IRS did not comply with the statutory notice requirements and this violation prevented the taxpayer from seeking relief in the Tax Court, but finding

that an injunction is not required where the "taxpayer has no interest in contesting its taxes in the Tax Court and there is no other irreparable hardship caused by a violation"). Consistent with this precedent, we find that if the IRS's failure to promulgate documents which it was legally obligated to provide prejudices the taxpayer, this failure precludes application of the penalty.

While it is certainly unfortunate that the IRS has failed to develop these materials in the more than ten years since this statute was passed, Jefferson has not shown any prejudice from the IRS's failure to provide these documents. Indeed, New Zion has previously faced tax liability and nothing was said about the IRS's failure to promulgate these materials at that time. Jefferson has not shown that had he been in possession of these materials, he would have paid the tax; instead, his argument on appeal is that he did not know of New Zion's escalating tax liabilities. Therefore, we find that the IRS is not estopped from recovering the penalty against Jefferson.

### D.  The IRS's failure to turn over evidence does not preclude summary judgment.

Finally, Jefferson argues that the IRS's failure to turn over evidence raises an issue of material fact that precludes summary judgment. Jefferson claims that it is possible the missing evidence would definitively show he was an honorary board member and that he had no actual knowledge of New Zion's unpaid payroll taxes. However, given his extensive involvement in New Zion's financial affairs and his reckless disregard of the day care's escalat-

ing tax liability, we are not persuaded that this evidence would have had any impact on Jefferson's liability.

Jefferson also argues that the IRS lost documents relevant to other New Zion board members. While section 6672(d) allows contribution from other "responsible" persons, Jefferson has not shown that the assessment against him was without foundation, that these documents would exculpate him, or that any of the other board members were involved with New Zion's financial affairs to the same extent as him and Hayes. *See 330 West Hubbard Restaurant Corp. v. United States*, 203 F.3d 990, 995 (7th Cir. 2000) ("the IRS's tax assessment is presumed correct"); *Ruth v. United States*, 823 F.2d 1091, 1094 (7th Cir. 1987) ("In general, courts will not look behind an assessment to evaluate the procedure and evidence used in making the assessment. Rather, courts conduct a *de novo* review of the correctness of the assessment, imposing the risk of nonpersuasion on the taxpayer.") (internal citation omitted). Because of the overwhelming evidence in the record that Jefferson was properly assessed as a "responsible person" and further, that he turned a blind eye to New Zion's increasing tax liabilities, we are simply not persuaded that these documents would make any difference in the outcome.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.

10-8-08