**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-1739**

MARY JOHNSON,

Plaintiff - Appellant,

FORD JOHNSON,

Counter Defendant - Appellant,

v.

UNITED STATES OF AMERICA,

Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Deborah K. Chasanow, Chief District Judge. (8:09-cv-00787-DKC)

Argued: September 17, 2013          Decided: November 5, 2013

Before WILKINSON, DUNCAN, and AGEE, Circuit Judges.

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Wilkinson and Judge Duncan joined.

**ARGUED:** Diana M. Schobel, DMS LAW, LLC, Frederick, Maryland, for Appellants. Gretchen M. Wolfinger, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland; Kathryn Keneally, Assistant

Attorney General, Teresa E. McLaughlin, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

AGEE, Circuit Judge:

Mary Johnson ("Mrs. Johnson") brought this suit against the United States seeking a refund of payments on a federal withholding tax penalty assessed against her under 26 U.S.C. § 6672.[1] The Government counterclaimed against both Mrs. Johnson and her husband, Ford Johnson ("Mr. Johnson"), individually, to reduce to judgment the remaining balance of the trust fund recovery penalties assessed against them. The Johnsons now appeal the district court's grant of summary judgment to the Government against each of them. For the reasons that follow, we affirm the judgment of the district court.

I.

The following facts are either uncontroverted, taken in the light most favorable to the Johnsons, or have been admitted by the Johnsons in their pleadings.[2] In 1969, Mr. Johnson formed a

---

[1] The § 6672 assessment was made against Mrs. Johnson for the following tax quarters ending: December 31, 2001; September 30, 2002; March 31, 2003; June 30, 2003; June 30, 2004; September 30, 2004; and December 31, 2004. (J.A. 27.)

[2] When reviewing the district court's grant of summary judgment, we construe the facts in the light most favorable to the Johnsons, the nonmoving party. Laber v. Harvey, 438 F.3d 404, 415 (4th Cir. 2006) (en banc); see also Bright v. QSP, Inc., 20 F.3d 1300, 1305 (4th Cir. 1994), cert. denied, 513 U.S. (1994) (statements in a party's pleadings are conclusively binding on that party).

non-profit corporation, Koba Institute, Inc. ("Koba Institute"),[3] to perform various government contracts in conjunction with Koba Associates, Inc. ("Koba Associates"), a for-profit corporation that he owned and managed. When Koba Associates failed to pay its payroll taxes in the mid-1990s, the Internal Revenue Service ("IRS") assessed trust fund recovery penalties against Mr. Johnson pursuant to 26 U.S.C. § 6672.[4] The outstanding payroll taxes, accompanied by the lien subsequently imposed on Mr. Johnson for the § 6672 trust fund recovery penalties, ultimately led Mr. Johnson to close Koba Associates.[5] The presence of the lien severely limited Mr. Johnson's ability to obtain credit for Koba Institute.

---

[3] Koba Institute provides residential and educational services to special needs children in Maryland.

[4] Section 6672 provides in pertinent part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title [a "responsible person"] who willfully fails to . . . account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a).

[5] When the IRS assessed trust fund recovery penalties against Mr. Johnson for the failure of Koba Associates to pay its payroll taxes, the IRS considered assessing the same penalties against Mrs. Johnson but ultimately declined to do so.

This fiscal reality led Mr. Johnson to approach Mrs. Johnson about restructuring Koba Institute so as to facilitate a continuation of their business.  In 1998, Koba Institute converted to a for-profit corporation under Maryland law, with Mrs. Johnson as its sole shareholder.  Because Mrs. Johnson "was not encumbered by a lien" like Mr. Johnson, her status as the corporation's owner enabled Koba Institute to enter into leases and other contracts, as well as obtain lines of credit based on Mrs. Johnson's endorsement.  (J.A. 998.)

As the sole shareholder of Koba Institute, Mrs. Johnson elected herself as chair of the corporation's board of directors in 2001.  The corporation's bylaws require that the chair of the board "be elected President of the Institute."  (J.A. 615.)[6]

---

[6] The bylaws describe the president's role as follows:

> The President [who] shall be chairperson of the Board of Directors . . . shall preside at all meetings of the Board and/or officers.  [S]he shall review, approve and recommend to the Board all proposed projects and budgets on an annual basis.  [S]he shall be authorized to execute . . . legal papers, documents and instruments on behalf of the Institute.  [S]he shall have general authority to manage the business and affairs of the Institute on a day to day basis, subject to and in accordance with the directions of the Board of Directors.

(J.A. 617-18.)  The bylaws also authorize the board members to "approv[e] . . . proposed projects and budgets," "establish[ ] . . . banking relations including [the] power to borrow money,"
(Continued)

5

According to the Johnsons, because they had agreed that Mrs. Johnson would be the primary caregiver of the couple's children, Mrs. Johnson "delegated" and "entrusted" her authority in the corporation to Mr. Johnson, and thereafter elected Mr. Johnson president of Koba Institute on February 20, 2001, notwithstanding the contrary bylaw requirement. (See J.A. 16, 478, 480, 1481–82, 1515.) Mrs. Johnson, in turn, served as the corporation's vice president.

The same day that Mrs. Johnson appointed herself as board chair, February 20, 2001, Koba Institute's board of directors— comprised of the Johnsons and an unrelated corporate secretary— unanimously approved the following resolution:

> The present holders of the offices of President, Vice-President, Treasurer and Secretary are authorized to sign checks, drafts, instruments, . . . and . . . orders for the payment of money from [Koba Institute] accounts, to endorse checks, instruments, evidences of indebtedness and orders payable, owned or held by [Koba Institute], and to . . . sign any application, deposit agreement, signature card or other documentation required by the Bank [of America], with the following limitation: . . . that either Ford T. Johnson, Jr. (President of the Company/Treasurer) or Mary L. Fogg Johnson (Vice-President of the Company/Chairperson) may act alone or with any other named signatory to said accounts in any

_____

and "control and manage[ ] . . . property, including [the] power to purchase, . . . and dispose of the same." (J.A. 616–17.)

6

> transactions with the Bank; however, any
> transactions . . . which are not signed by
> either [of them] must be signed by at least
> two of the following people . . . .

(J.A. 612 (emphasis added).)  Koba Institute's payroll account expressly provided that Mrs. Johnson had the power to "sign singularly" on that account.  (J.A. 647, 651, 670; see also J.A. 537–38, 1486–87.)

Having "delegated" her authority to Mr. Johnson, Mrs. Johnson's actual involvement at Koba Institute was limited during the 2001 through 2004 period.  Nonetheless, she had an office at Koba Institute and received a significant annual salary ranging from approximately $100,000 to $193,000, as well as a corporate car and cell phone.  In addition, the rent for Mrs. Johnson's residence, shared with Mr. Johnson, was provided by Koba Institute.[7]

In the 2001 to 2004 period, Mrs. Johnson only came to work once per month.  When she did so, she would approve any board resolutions, such as ratification of Mr. Johnson's acts as president, or perform tasks in the human resources department.  Thus, while Mrs. Johnson may have given an opinion regarding

_____

[7] During the same periods, Mr. Johnson received no direct salary from the corporation, instead having Koba Institute pay the rent for the couple's home.  In 2001, 2002, and 2004, these rent payments totaled between $40,000 and $50,000.  (J.A. 468–69, 473, 556, 594–95.)  In 2003, however, Koba Institute did not make any rent payments on Mr. Johnson's behalf, and he received no compensation from the corporation.

7

hiring and firing employees during the relevant time frame, Mr. Johnson made the ultimate decisions regarding employment. (See J.A. 1508-09, 1608, 1661.) Indeed, because Mr. Johnson oversaw the corporation's day-to-day operations, other employees viewed him as "the one who decides everything" and went to Mr. Johnson—rather than Mrs. Johnson—with any questions that arose in the business, including financial matters such as the payment of payroll taxes. (J.A. 1605.)

When Mr. Johnson was out of the office, he left explicit instructions for Mrs. Johnson to follow on Koba Institute business, including which checks to sign in his absence. Because of her limited involvement with the corporation's daily operations, however, Mrs. Johnson was unaware of "the background or the context" for these checks and did not feel comfortable signing any checks that Mr. Johnson had not authorized. (J.A. 1576.) Accordingly, from 2001 through 2004, she never attempted to write checks that Mr. Johnson had not already approved.

Near the end of 2004, Mrs. Johnson received a notice from the IRS that Koba Institute had not paid its payroll taxes for several quarters from 2001 through 2004. Prior to that time, Mrs. Johnson was unaware that the payroll taxes were unpaid. Upon receipt of the notice, she had "a serious talk" with Mr. Johnson and "told him" that the situation was "unacceptable" and that Koba Institute had "to take steps to make sure that it [did

8

not] happen again." (J.A. 1501.) Mrs. Johnson then fired the finance director, who had been tasked with making payroll tax payments, and "directed Mr. Johnson to personally handle all future tax payments as of January 2005." (J.A. 17.) She "required" Mr. Johnson to provide her with "visual proof" of all withholding tax payments that Koba Institute subsequently made. (J.A. 17.) Additionally, at least with regard to the payroll account, Mrs. Johnson no longer followed the prior procedure for check authorization; that is, she no longer required instruction from Mr. Johnson before writing checks herself from the payroll account for payment of the taxes.

Due to Mrs. Johnson's "revamped oversight of tax payments," Koba Institute began remitting its post-2004 payroll taxes to the IRS in full and, generally, on time. (J.A. 17.) The corporation did not, however, pay the outstanding delinquent payroll taxes for the 2001 through 2004 delinquent periods although it continued to pay its other business debts, such as employee wages and Mrs. Johnson's compensation. Subsequently, the IRS assessed trust fund recovery penalties (the "100% penalty") against Mr. and Mrs. Johnson individually, pursuant to

9

26 U.S.C. § 6672.[8]  Mrs. Johnson later paid $351.00 toward her assessed penalty.

On March 30, 2009, Mrs. Johnson filed suit in the United States District Court for the District of Maryland seeking a refund of the penalty she had paid, asserting that the § 6672 assessment against her was erroneous.[9]  The Government filed a counterclaim against both of the Johnsons in order to reduce its assessments to judgment, seeking to recover the balance of assessments due, including penalties, interest, and costs. Based upon transcripts of account showing the balances due as of August 22, 2011, the Government ultimately sought to recover $304,355.90 from Mrs. Johnson and $240,071.12 from Mr. Johnson.

The Government filed separate motions for summary judgment against Mr. and Mrs. Johnson, contending that each was liable under § 6672 as a "responsible person" who had "willfully" failed to pay over the withheld payroll taxes.  The Government supported the assessments with Forms 4340—Certificates of Assessments, Payments, and Other Specified Matters, noting that the assessments on the Forms 4340 were presumptively correct and that the burden fell on the Johnsons to demonstrate otherwise.

---

[8] The § 6672 trust fund recovery penalty is commonly termed the "100% penalty" by tax practitioners and we use that term here for the § 6672 penalties assessed.

[9] Mrs. Johnson initially named the IRS as the defendant in this action.  The parties subsequently agreed that the proper defendant was the United States, which was substituted as such.

10

The Government also moved to strike the reports and testimony of an expert witness the Government anticipated the Johnsons would rely upon in opposing summary judgment.

The Johnsons jointly opposed the Government's motion to strike, and separately opposed the Government's motions for summary judgment. Mr. Johnson also moved for partial summary judgment against the Government as to him.

The district court granted the Government's motions for summary judgment, denied Mr. Johnson's motion for partial summary judgment, and denied the Government's motion to strike as moot. With respect to Mr. Johnson, the district court determined that the assessment against him was valid, rejecting his argument that the assessment was not made within the three-year limitations period established by I.R.C. § 6501. The district court then concluded that no material issue of disputed fact remained as to Mr. Johnson.

With respect to Mrs. Johnson, the district court held that she had also failed to show a genuine dispute of material fact regarding her liability. The court determined that "Mrs. Johnson was a responsible person at Koba Institute during the relevant quarters even though her participation in the corporation's affairs was minimal," and that she had acted "willfully" in failing to see to it that the outstanding tax liabilities were paid. (J.A. 253, 268.)

11

The district court also concluded that the judgment entered against Mrs. Johnson would not result in a double recovery for the Government. The court noted the Government's policy of retaining only one full satisfaction of an underlying tax liability despite it being able to attempt to collect against any responsible party, and reasoned that any potential issues could be avoided through careful drafting of the final judgment order.

Finally, the district court denied as moot the Government's motion to strike the reports of the Johnsons' expert and to exclude his testimony at trial, finding that in their opposition to the Government's motions for summary judgment, the Johnsons had "neither relied upon [the expert's] reports nor produced any evidence to create an issue of material fact" that would prohibit the entry of summary judgment against them. (J.A. 271.)

The district court accordingly entered judgment in favor of the Government and against Mrs. Johnson for $304,955.90 and against Mr. Johnson for $240,071.12, plus interest in each instance at the rate specified in I.R.C. § 6601 from August 22, 2011 until payment. The judgment order provided that the judgment would "be reduced to the extent that the United States . . . has collected or will collect on those debts pursuant to the offer in compromise it approved with Koba Institute." (J.A.

12

274.)  The Johnsons filed a joint motion to alter, amend, or relieve the judgment, which the district court denied.

The Johnsons timely noted this appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

The Internal Revenue Code ("I.R.C." or the "Code") requires employers to withhold federal social security and income taxes from the wages of their employees.  See 26 U.S.C. §§ 3102(a), 3402(a); Erwin v. United States, 591 F.3d 313, 319 (4th Cir. 2010).  Because the employer holds these taxes as "special fund[s] in trust for the United States," 26 U.S.C. § 7501(a) (emphasis added), the withheld amounts are commonly referred to as "trust fund taxes," Slodov v. United States, 436 U.S. 238, 243 (1978) (internal quotation marks omitted).

The Code "assure[s] compliance by the employer with its obligation . . . to pay" trust fund taxes by imposing personal liability on officers or agents of the employer responsible for "the employer's decisions regarding withholding and payment" of the taxes.  Id. at 247 (interpreting 26 U.S.C. § 6672).  To that end, § 6672(a) of the Code provides that "[a]ny person required to collect, truthfully account for, and pay over any tax . . . who willfully fails" to do so shall be personally liable for "a penalty equal to the amount of the tax evaded, or not . . . paid

13

over," the 100% penalty. 26 U.S.C. § 6672(a). Although labeled as a "penalty," § 6672 is not primarily a punitive provision as it "brings to the government only the same amount to which it was entitled by way of the tax." Turnbull v. United States, 929 F.2d 173, 178 n.6 (5th Cir. 1991) (internal quotation marks omitted).

Personal liability for a corporation's unpaid trust fund taxes extends to any person who (1) is "responsible" for collection and payment of those taxes; and (2) "willfully fail[s]" to see that the taxes are paid. Plett v. United States, 185 F.3d 216, 218 (4th Cir. 1999); O'Connor v. United States, 956 F.2d 48, 50 (4th Cir. 1992). Once the IRS assesses a taxpayer for this liability, the taxpayer has the burden of proof at trial on both elements of § 6672 liability. See O'Connor, 956 F.2d at 50.

We review de novo a district court's grant of summary judgment to the Government, resolving all disputed facts in favor of the taxpayer. See O'Connor, 956 F.2d at 50. To defeat summary judgment, however, the taxpayer—like any other litigant—must identify an error of law or a genuine issue of disputed material fact. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); see also Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). "[I]n the absence of disputed material facts, summary judgment

14

represents a favored mechanism to secure the 'just, speedy, and inexpensive determination'" of taxpayer liability under § 6672. Plett, 185 F.3d at 223 (emphasis in original) (quoting Fed. R. Civ. P. 1).

## III.

With the foregoing principles in mind, we turn to the claims of error raised on appeal. Mr. Johnson contends that the grant of summary judgment was erroneous because the assessment of the 100% penalty as to him was time-barred under § 6501 of the Code. Mrs. Johnson argues that the grant of summary judgment against her was erroneous because she was neither a "person responsible" for the payment of Koba Institute's withholding taxes nor "willfully" failed to do so. Lastly, the Johnsons posit that the amounts of their respective tax liabilities under § 6672 were incorrectly calculated because disputed issues of material fact remained to be determined. We consider each argument in turn.

## A.

Mr. Johnson contends that the assessment of the 100% penalty against him was not "made within the limitations period set forth in 26 U.S.C. § 6672." (Br. 29.) However, Mr. Johnson's one-page "argument" on brief as to this issue gives no

description as to the basis at law for his contention. Even after questioning at oral argument, we are left with no firm guide as to why Mr. Johnson contends the assessments are time-barred.

Mr. Johnson has not challenged the basis for the district court's decision in any meaningful way. See Fed. R. App. P. 28(a)(9)(A) (requiring argument section of an appellant's opening brief to contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"). Here, Mr. Johnson has failed to comply with the dictates of Federal Rule of Appellate Procedure 28(a)(9)(A), as he offers no argument explaining how the district court erred; rather, he simply states the issue he wishes to raise and cites several sections of the Code, but without analysis of how these statutes would apply to him. As a result, we consider Mr. Johnson to have abandoned or waived his challenge to the district court's determination that the assessment of the 100% penalty against him under § 6672 was not timely. See Edwards v. City of Goldsboro, 178 F.3d 234, 241 n.6 (4th Cir. 1999) ("Failure to comply with the specific dictates of [Federal Rule of Appellate Procedure 28(a)(9)(A)] with respect to a particular claim triggers abandonment of that claim on appeal."); see also Oken v. Corcoran, 220 F.3d 259, 274 n.2 (4th Cir. 2000) (Michael, J.,

16

concurring) ("In order to preserve an issue on appeal, however, it is not enough to simply assert the claim; a party must provide supporting argument.").

Accordingly, we affirm the district court's grant of summary judgment against Mr. Johnson individually.

B.

We next address the argument that the district court erred in granting summary judgment against Mrs. Johnson. Specifically, Mrs. Johnson contends that she was not (1) a "person responsible" for the payment of Koba Institute's withholding taxes; and (2) did not "willfully" fail to pay over those taxes. We must disagree with Mrs. Johnson because the undisputed record shows that she was properly liable for the 100% penalty.

1.

The Code defines a "responsible person" as one "required to collect, truthfully account for, and pay over any tax," 26 U.S.C. § 6672(a) (emphasis added). The Supreme Court has interpreted this statutory language to apply to all "persons responsible for collection of third-party taxes and not . . . [only] to those persons in a position to perform all three of the enumerated duties." Slodov, 436 U.S. at 250. Thus, the

Code deems anyone required to "collect" or "account for" or "remit" taxes a "responsible person" for purposes of § 6672. See Plett, 185 F.3d at 219.

In determining whether a person is "responsible" under § 6672, we undertake a "pragmatic, substance-over-form inquiry" focused on the person's status, duty, and authority within the corporation. Id. The "crucial inquiry is whether the person had the 'effective power' to pay the taxes—that is, whether he [or she] had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed." Id. (quoting Barnett v. IRS, 988 F.2d 1449, 1454 (5th Cir. 1993)).

Because this analysis focuses "on substance rather than form," holding a corporate title alone does not render a taxpayer a "responsible person." O'Connor, 956 F.2d at 51. While a determination of that status is necessarily fact-based, summary judgment is nonetheless appropriate where, in the absence of genuine disputes of material fact, it is clear "as a matter of law" that the taxpayer satisfies this test and is a "responsible person." Barnett, 988 F.2d at 1454 & n.10 (acknowledging that "countless courts have found responsibility [for purposes of § 6672] as a matter of law" because "extensive caselaw . . . narrowly constrains a factfinder's province in § 6672 cases"). Our analysis is guided by a list of non-exclusive factors common in the § 6672 case law, such as whether

18

the taxpayer served as an officer of the corporation or a member of its board of directors, controlled the corporation's payroll, determined which creditors to pay and when to pay them, participated in the corporation's day-to-day management, had the ability to hire and fire employees, and possessed check-writing authority.  Erwin, 591 F.3d at 321; Plett, 185 F.3d at 219.

Although "a party cannot be presumed to be a responsible person merely from titular authority," O'Connor, 956 F.2d at 51, status as an officer or director is "nevertheless material" to this determination, Teets v. United States, 29 Fed. Cl. 697, 706 (Fed. Cl. 1993).  Mrs. Johnson had been the corporation's sole shareholder since 1998 and consequently had the effective power to change the officers and directors as she chose and thereby direct the business of the corporation.  Separately as both vice president and chair of the board of directors since early 2001, Mrs. Johnson enjoyed considerable actual authority at Koba Institute.

The corporation's bylaws, board resolutions, and banking documents demonstrate that Mrs. Johnson was a "responsible person," as it is clear that she had effective control of the corporation, including its finances.  See Taylor v. IRS, 69 F.3d 411, 416-17 (10th Cir. 1995) (holding corporate director and officer a "responsible person" as a matter of law because he "possessed sufficient control over corporate finances, had

19

authority to borrow funds and write checks and thereby had the 'effective power' to pay those taxes" (quoting Barnett, 988 F.2d at 1454)).  The foregoing corporate documents indicate that Mrs. Johnson, while serving as chair of the board, would also serve as president of the corporation, a role that included authority to manage Koba Institute's daily affairs and to execute checks and other legal documents on its behalf.  Although Mrs. Johnson "delegated" and "entrusted" this authority to Mr. Johnson prior to 2005, (See J.A. 16, 478, 480, 482, 1481–82, 1515), remaining only minimally involved in the corporation's affairs as board chair and vice president, delegation of such authority does not relieve a taxpayer of responsibility under § 6672, Purcell v. United States, 1 F.3d 932, 937 (9th Cir. 1993) (That a taxpayer's function in an enterprise "is unconnected to financial decision making or tax matters is irrelevant where that individual has the authority to pay or to order the payment of delinquent taxes."); Erwin, 591 F.3d at 322.  A taxpayer may be a "responsible person" if she "had the authority required to exercise significant control over the corporation's financial affairs, regardless of whether [s]he exercised such control in fact."  Purcell, 1 F.3d at 937 (concluding that a president and sole shareholder, who was also an authorized signatory on the corporation's checking account, was a "responsible person" even though he had fully delegated all financial duties to another

20

employee).  Thus, despite delegating her authority to Mr. Johnson and permitting him to run the corporation's daily affairs, Mrs. Johnson remained a "responsible person" because she had effective control of the corporation and the effective power to direct the corporation's business choices, including the withholding and payment of trust fund taxes.

Although Mrs. Johnson maintains that any authority she held was merely technical in nature, the undisputed evidence establishes that she possessed both legal and actual authority over Koba Institute.  See United States v. Landau, 155 F.3d 93, 103 (2d Cir. 1998) (if taxpayer fails to show a genuine dispute of material fact on nature of authority, the court "may reasonably conclude that the documentary evidence of authority reflects the reality").  Mrs. Johnson's voluntary minimal involvement in daily corporate affairs before 2005, however, and assertions that Mr. Johnson exercised all daily operating authority fail to create a genuine dispute of material fact regarding limitations on her effective power as to the trust fund taxes.  Any deferral by Mrs. Johnson in the exercise of her authority never altered the fact that she possessed "effective power" over Koba Institute at all times.  See Barnett, 988 F.2d at 1454.  Indeed, Mrs. Johnson's actions immediately after learning of the tax delinquencies in December 2004—a period that "cast[s] light" on her responsibility from 2001 through 2004—

21

demonstrate that her actual authority was co-extensive with the legal authority she possessed. Erwin, 591 F.3d at 321.

Mrs. Johnson admits in her pleadings that she "fired the finance director," the employee tasked with making payroll tax payments, as soon as she discovered that Koba Institute had not remitted these taxes as required by law. (J.A. 17.) She also "directed Mr. Johnson to personally handle all future tax payments as of January 2005" and "required" him to provide her with "visual proof" of all tax payments the corporation made. (J.A. 17.) These admissions indicate that Mrs. Johnson's status in the corporation during the quarters at issue enabled her to have "substantial input into [its financial] decisions [from 2001 through 2005], had [s]he wished to exert [her] authority."[10] Barnett, 988 F.2d at 1455 (quotation marks omitted).

_____

[10] Although not singly determinative, Mrs. Johnson's execution of corporate leases and lines of credit as a guarantor for Koba Institute offers additional support for the conclusion that she was a "responsible person" for § 6672 purposes. See Erwin, 591 F.3d at 322 (discussing a taxpayer's personal guarantees of corporate loans in determining his responsibility, but noting that this fact "[did] not alone establish" his status as a "responsible person"). Without these acts by Mrs. Johnson, the corporation's financial capacity would have been adversely affected. Because Mrs. Johnson actively intervened to keep the corporation financially viable, Koba Institute was able to pay its creditors. The record further reflects that Mrs. Johnson made more than a dozen loans to Koba Institute between 2001 and 2003, after Mr. Johnson had informed her that the corporation needed additional funds to cover its operating expenses.

Moreover, the fact that, from 2001 through 2004, Mrs. Johnson followed the corporation's internal policy and did not write checks without knowing that Mr. Johnson had previously approved them does not negate § 6672 "responsible person" status. (See J.A. 1484–91, 1576.) Although she followed corporate procedure without exception during that time, it is undisputed that Mrs. Johnson ceased following this policy almost immediately upon learning of the 2001-2004 payroll tax deficiencies and could have done so at any earlier time. Following her "revamped oversight of tax payments," Mrs. Johnson would write checks from the payroll account without any instruction from Mr. Johnson. (J.A. 17, 1484–85.) Accordingly, the fact that Mrs. Johnson previously chose not to write checks without Mr. Johnson's approval does not show that she was prevented earlier from doing so other than by her own choice. See, e.g., Thosteson v. United States, 331 F.3d 1294, 1299–1300 (11th Cir. 2003) (holding corporate officer and stockholder a "responsible person" as a matter of law even though he had "limited check writing authority, up to only $750, without a countersignature"); Lyon v. United States, 68 F. App'x 461, 469 (4th Cir. 2003) (unpublished) (per curiam) ("The fact that [the taxpayer] chose not to exercise his legal authority is not enough to show that he had no actual authority. . . . [He] has not demonstrated that his father actually prevented him, or that

23

he could have prevented him, from paying the taxes if [he] had attempted to do so."). The record also indicates that Koba Institute opened several operating accounts between 2001 and 2005, and that on each of those accounts, Mrs. Johnson was fully authorized to write checks and execute other bank documents.

While she may not have been running the day-to-day operations of the corporation between 2001 and 2004, Mrs. Johnson had a non-delegable responsibility to monitor Koba Institute's financial affairs. See Barnett, 988 F.2d at 1457 ("[W]e believe that not only is it a bad business practice for a high-level company official such as [Mrs. Johnson] to fail to monitor [the corporation's] finances, it also subjects [her] to being held a responsible party under § 6672."). Mrs. Johnson had the effective power to exercise authority when she chose to do so, even though she chose at times to voluntarily limit her involvement in corporate affairs. Although Mrs. Johnson often chose not to exercise the authority which she possessed, such a decision is insufficient to permit a taxpayer to avoid § 6672 responsibility. See Kinnie v. United States, 994 F.2d 279, 284 (6th Cir. 1993) (stating that a taxpayer need not "always exercise his powers" to remain responsible for seeing that withholding taxes are paid, and "may not escape liability by delegating the task of paying over the taxes to someone else"). Moreover, after 2004, while the prior periods' payroll taxes

remained unpaid, Mrs. Johnson actively exercised her authority over the affairs of Koba Institute while continuing to receive substantial compensation and benefits from the corporation.[11]

We therefore conclude that the Government presented undisputed evidence that established as a matter of law that Mrs. Johnson was a "responsible person" under § 6672 during the relevant tax periods because she had the effective power to pay the trust fund taxes of Koba Institute.[12]

---

[11] While also relevant to the "willfulness" finding discussed in the next section, the same evidence of Mrs. Johnson's knowing receipt of substantial assets from the corporation while the payroll taxes remained unpaid also bolsters the proof of her "responsible person" status. The record shows that Mrs. Johnson received an annual salary ranging from approximately $100,000 to $193,000 from 2001 through 2004, as well as a corporate car and cell phone. Koba Institute also paid the rent for the Johnsons' home, totaling between $40,000 and $50,000 in 2001, 2002, and 2004.

[12] We note that other courts have reached precisely the same conclusion in considering similar facts. See, e.g., Jefferson v. United States, 546 F.3d 477, 481 (7th Cir. 2008) (holding board president "responsible person" as a matter of law because he secured loans and directed past payment of taxes for the corporation, reviewed financial reports, and had check-signing authority); Thosteson, 331 F.3d at 1299–1300 (holding corporate officer and stockholder a "responsible person" as a matter of law even though he had "limited check writing authority, up to only $750, without a countersignature"); Taylor, 69 F.3d at 417 (holding corporate director and officer a "responsible person" as a matter of law because he "possessed sufficient control over corporate finances, had authority to borrow funds and write checks and thereby had the 'effective power' to pay those taxes" (quoting Barnett, 988 F.2d at 1454)); Greenberg v. United States, 46 F.3d 239, 243–44 (3d Cir. 1994) (holding in-house controller a "responsible person" as a matter of law even though he took instructions from the controlling stockholder and "feared for his job were he to independently issue a check for (Continued)

25

2.

Having found Mrs. Johnson a "responsible person," we turn to the other necessary element of § 6672 liability, whether she "willfully" failed to collect, account for, or remit payroll taxes to the United States.  26 U.S.C. § 6672(a); Plett, 185 F.3d at 219.  This inquiry focuses on whether Mrs. Johnson had "knowledge of nonpayment or reckless disregard of whether the payments were being made."  Plett, 185 F.3d at 219 (quoting Turpin v. United States, 970 F.2d 1344, 1346 (4th Cir. 1992)).

Mrs. Johnson contends that she did not act "willfully" in failing to remit Koba Institute's delinquent payroll taxes because she did not learn of the deficiency until the IRS notified her in December 2004.  This argument, however, overlooks that a taxpayer may act "willfully" for purposes of § 6672 even though she does not learn about unpaid taxes until after the corporation has failed to pay them.  "[W]hen a responsible person learns that withholding taxes have gone unpaid in past quarters for which he [or she] was responsible,

the [tax] delinquency"); Kinnie, 994 F.2d at 284 (holding corporate vice president and fifty-percent shareholder a "responsible person" as a matter of law because he had check-signing authority, hired an accountant to review the books, and eventually took control of the business); Mazo v. United States, 591 F.2d 1151, 1156 (5th Cir. 1979) (holding corporate stockholders, officers, and directors "responsible persons" as a matter of law even though others handled all day-to-day operations and prepared all corporate checks).

he [or she] has a duty to use all current and future unencumbered funds available to the corporation to pay back those taxes." Erwin, 591 F.3d at 326. If the taxpayer thereafter knowingly permits payments of corporate funds to be made to other creditors, a finding of willfulness is appropriate. See id. ("Even assuming . . . that [the taxpayer] did not act willfully prior to learning of the full extent of the tax deficiencies . . ., his conduct after that point unquestionably evidences willfulness as a matter of law." (emphasis in original)).

The record demonstrates that Koba Institute continued to make payments to other creditors using unencumbered funds following Mrs. Johnson's receipt of the IRS notice in December 2004. The Government has produced numerous salary checks that the corporation issued to Mrs. Johnson in 2005, which Mrs. Johnson readily cashed. Yet it is undisputed that Mrs. Johnson, a "responsible person," knew that payroll taxes for numerous quarters from 2001 through 2004 remained unpaid. Mrs. Johnson's failure to remedy the payroll tax deficiencies upon learning of their existence in December 2004, while directing corporate payments elsewhere, including to herself, constitutes "willful" conduct under § 6672. This is particularly so given that, at Mrs. Johnson's direction, Koba Institute paid other creditors during this period. And, as noted earlier, during the 2001 to

27

2004 delinquent tax periods, Mrs. Johnson received well in excess of $500,000 in compensation and benefits from the corporation while the payroll taxes went unpaid. Cf. Turpin, 970 F.2d at 1347 ("The intentional preference of other creditors over the United States is sufficient to establish the element of willfulness under section 6672(a)." (internal quotation marks omitted)). Even viewing the evidence in the light most favorable to Mrs. Johnson, we conclude that the record allows no conclusion other than that the failure to pay the payroll taxes was willful on Mrs. Johnson's part.

3.

In sum, we conclude that the Government has presented undisputed evidence sufficient to establish as a matter of law that Mrs. Johnson was a "responsible person" under § 6672 during the relevant tax periods, and that she "willfully" failed to see that the withholding taxes were paid. No genuine dispute as to any material fact remains to be decided which would alter this conclusion. Accordingly, we hold that the district court did not err in granting summary judgment against Mrs. Johnson individually.

C.

Finally, we briefly address the claims raised by the Johnsons with respect to the district court's determination of the amounts of their respective 100% penalty liabilities. Relying on the reports of their expert witness, Leo Bruette ("Bruette"), the Johnsons assert that there is a genuine issue of material fact as to the amounts of that liability. They allege that Bruette identified "numerous errors, omissions[,] and inconsistencies" in the tax assessments made against them, which therefore undermined the Government's proof of the amounts owed. (Br. 26.)

The district court, however, found that the Johnsons "neither relied upon Bruette's reports nor produced any evidence to create an issue of material fact" that would preclude summary judgment. (J.A. 271.) Indeed, the Johnsons did not discuss or cite Bruette's reports in either of their opposition briefs to the Government's summary judgment motions, in Mr. Johnson's motion for partial summary judgment, or even as exhibits in opposing summary judgment. Further, the Johnsons do not contest the district court's factual conclusion in this regard on appeal. The reports, therefore, could not—and did not—create a genuine issue of material fact.

29

We also find that Mrs. Johnson's concerns regarding double recovery are without merit.[13] Mrs. Johnson asserts that entering judgment against her could result in double recovery for the Government because it may collect a significant portion of the unpaid trust fund taxes through an offer in compromise that Koba Institute negotiated with the IRS. We note that Mr. Johnson raised a similar argument when the Government previously sought judgment against him for trust fund recovery penalties at Koba Associates, which was clearly rejected by the district court. See Johnson v. United States, 203 F. Supp. 2d 416, 425 (D. Md. 2002), aff'd, 50 F. App'x 113 (4th Cir. 2002) (unpublished) (per curiam), cert. denied, 540 U.S. (2003). In that case, Mr. Johnson argued that the Government "might attempt to obtain some sort of double recovery from both Koba [Associates] and [him] in excess of the established amount of withholding taxes due." Id. After explaining that the Government may attempt to satisfy a debt for unpaid payroll taxes against the business or the taxpayer, the district court clarified that the IRS follows an "established administrative policy" of only collecting such tax delinquencies once. Id.; see also id. at 425–26 ("[T]he mere fact that the [Government] is attempting to secure a second

_____

[13] This issue was raised, although obliquely, by Mrs. Johnson in her opposition to the Government's motion for summary judgment, and therefore can only affect her liability. Mr. Johnson did not raise a double recovery argument.

30

source for the payment of taxes owed does not necessarily mean that it will attempt to exhaust both sources in excess of the debt."). The court reasoned that "any lingering concerns of double recovery" could be allayed "by a carefully drafted judgment order of the district court." Id. at 425. We agree with the district court's reasoning in the prior case, and note that similar precautions were taken in this case. The district court's judgment order specifically provides that the judgments against the Johnsons will "be reduced to the extent that the United States . . . has collected or will collect on those debts pursuant to the offer in compromise it approved with Koba Institute." (J.A. 274.)

Mrs. Johnson further asserts that the Government might succeed in obtaining a double recovery because certain voluntary payments made by Koba Institute were not properly credited. She does not, however, develop this argument or cite any evidence to corroborate it. See Fed. R. App. P. 28(a)(9)(A) (requiring argument section of an appellant's opening brief to contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"). As a result, we consider her to have abandoned this claim. See Edwards, 178 F.3d at 241 n.6. Moreover, while Koba Institute did designate some payments, those applied to the second quarter of 2001 (ending June 30,

31

2001), which is not a quarter for which Mrs. Johnson was found liable.

Accordingly, we conclude that the district court correctly determined the amounts of the Johnsons' respective tax liabilities under § 6672.

IV.

For all of the foregoing reasons, we affirm the judgment of the district court.

<u>AFFIRMED</u>